## INDEX TO APPENDIX

APPENDIX "A"

      BRIEF FOR APPELLANT TO THE SUPERIOR COURT OF
      PENNSYLVANIA

APPENDIX "B"

      OPINION OF THE SUPERIOR COURT OF PENNSYLVANIA
      DATED MAY 14, 1991

APPENDIX "C"

      BRIEF FOR APPELLANT TO THE SUPERIOR COURT OF
      PENNSYLVANIA

APPENDIX "D"

      OPINION OF THE SUPERIOR COURT OF PENNSYLVANIA
      DATED JULY 28, 1999

**APPENDIX "A"**

IN THE SUPERIOR COURT OF PENNSYLVANIA

FOR THE HARRISBURG DISTRICT

---

NO. 269  HBG., 1991

---

COMMONWEALTH OF PENNSYLVANIA,
Appellee

VS.

CRAIG A. WEST,
Appellant

---

BRIEF FOR APPELLANT

---

Appeal of Craig A. West, from the Judgment
of Sentence, dated April 22, 1991, by the
Honorable Warren G. Morgan, Judge, Twelfth
Judicial District of Pennsylvania, docketed
to No. 2283 Criminal Division 1990, Dauphin
County Court of Common Pleas.

Thomas A. Thornton
Chief Deputy Public Defender
I.D. #44208

Dauphin County
Veterans Memorial Office Bldg.
Suite 600, 112 Market Street
P.O. Box 1295
Harrisburg, Pa.  17108
(717) 255-2746

<u>INDEX TO BRIEF</u>

<u>Page</u>

  I.   STATEMENT OF JURISDICTION......................   1

  II.   ORDER OR OTHER DETERMINATION IN QUESTION.......   2

 III.   STATEMENT OF QUESTIONS PRESENTED...............   4

  IV.   STATEMENT OF THE CASE..........................   5

  V.   SUMMARY OF ARGUMENT............................   7

  VI.   ARGUMENT......................................   9

 VII.   CONCLUSION....................................  25

<u>APPENDIX</u>

Hospital Report................................Exhibit #1

Interview of Kamela Y. Ditty,
dated August 9, 1991............................ Exhibit #2


Opinion, Dauphin County Court of Common Pleas, by
the Honorable Warren G. Morgan,
dated June 20, 1991

<u>TABLE OF CITATIONS</u>

<u>Cases</u>:                                                              Page

<u>Chambers v. Mississippi</u>, 410 U.S. 284, 302 (1973)...    12

<u>Commonwealth v. Black</u>, 337 Pa. Super. 548, 487
 A.2d 396 (1985)..............................    14

<u>Commonwealth v. Boyle</u>, 498 Pa. 486, 447 A.2d
 250 (1982)..................................    21

<u>Commonwealth v. Brady</u>, 510 Pa. 123, 507 A.2d
 66 (1986)...................................    11

<u>Commonwealth v. Chacko</u>, 500 Pa. 571, 459 A.2d
311 (1983)...................................    18

<u>Commonwealth v. Dickerson</u>, 2 D.&C. 4th 297, 301-
 302 (C.P. Dela. 1989)........................    15

<u>Commonwealth v. Eubanks</u>, 511 Pa. 201, 210, 512 A.2d
 619, 624 (1986).............................    12

<u>Commonwealth v. Gaerttner</u>, 335 Pa. Super. 203, 218,
 484 A.2d 92, 100 (1984)......................    22

<u>Commonwealth v. McCusker</u>, 448 Pa. 382, 388, 292
 A.2d 286, 289 (1972)........................    12

<u>Commonwealth v. Majorana</u>, 503 Pa. 602, 470
 A.2d 80 (1983)..............................    14

<u>Commonwealth v. Nichols</u>, 485 Pa. 1, 400 A.2d
 1281 (1979).................................    22

<u>Commonwealth v. Niemetz</u>, 282 Pa. Super. 431, 422
 A.2d 1369 (1984)............................    21

<u>Commonwealth v. Woods</u>, 275 Pa. Super. 392, 418
 A.2d 1346 (1980)............................    11

<u>Davis v. Alaska</u>, 415 U.S. 308, 94 S.Ct. 1105
 39 L.Ed.2d 347 (1974).......................    15

<u>Webb v. Texas</u>, 409 U.S. 95, 98 (1972)..............    12


<u>Statutes</u>:

Rape Shield Law, 18 Pa. C.S. §3104..................    4

## I.   <u>STATEMENT OF JURISDICTION</u>

Jurisdiction over this matter is conferred upon This Honorable Court by §742 of the Judicial Code, Act of July 9, 1976, P. L. 586, No. 142, §2, (42 Pa. C.S.A. §742), providing that the Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the Courts of Common Pleas, regardless of the nature of the controversy or the amount involved, except such classes of appeals as are within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court.

## II.  ORDER OR OTHER DETERMINATION IN QUESTION

### ORDER

We think that any sentence less than that which we are about to impose would depreciate the seriousness of his conduct and we are utterly convinced that there is an undue risk that this Defendant would commit another like crime and that he is indeed in need of correctional treatment that can be provided most effectively by his commitment to an institution.  We think the factors that we have recited and impressions about the circumstances of this offense are such that he could be sentenced under the aggravated range.  However, we are going to sentence him at the most severe end of the standard range.  We think it is entirely warranted under the circumstances of this case where we think that this individual is a threat, a very real threat to the physical well-being of women.

Accordingly on the charge of rape, the Defendant is to pay the costs of prosecution and he is to undergo imprisonment in the state institution for a term, the minimum which shall be five years and the maximum which shall be ten years with credit for time served from August 3, 1990.  And he stands committed to the Correctional, Diagnostic, and Classification Center in Camp Hill for compliance with the sentence.

On the charge of involuntary deviate sexual intercourse, the Defendant is to pay the costs of prosecution.  He is to undergo imprisonment in the state institution for a term, the minimum which shall be five years, the maximum which shall be ten years to be served consecutively with the sentence imposed on the charge of rape and he stands committed to the Correctional, Diagnostic, and Classification Center at Camp Hill for compliance with the sentence.  [N.S. 6-7]

[Order of the Court April 22, 1991]

### III.   STATEMENT OF THE QUESTIONS PRESENTED

1.   WHETHER IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO DENY THE APPELLANT THE RIGHT TO INTRODUCE EVIDENCE TO REBUT THE COMMONWEALTH CLAIM THAT TRAUMA-INDUCED HYSTERIA CAUSED UNTIMELY REPORTING OF THE CRIMES?

2.   WHETHER THE TRIAL COURT ERRED BY ALLOWING AN INVOLUNTARY, IRRELEVANT, CONSISTENT STATEMENT TO BE USED AS IMPEACHMENT AFTER IT HAD BEEN SUPPRESSED AS A RESULT OF A VIOLATION OF THE APPELLANT'S CONSTITUTIONAL RIGHTS?

3.   WHETHER THE TRIAL COURT ERRED BY NOT DECLARING A MISTRIAL UPON NON-RESPONSIVE REMARKS OF A PAROLE OFFICER WHO TESTIFIED THAT SHE HAD PREVIOUSLY SUPERVISED THE APPELLANT?

## IV. STATEMENT OF THE CASE

Craig West was arrested on August 3, 1990. Eleven days earlier he had been donating blood at the Plasma Center in Harrisburg when he met Linda Smith. Craig West testified that he felt sorry for her because her car wouldn't start and offered to help. [N.T. 304-306] The car finally started and they took a drive that ended on a country lane in the woods. [N.T. 310-316] There they engaged in sexual activity. [N.T. 320-324]

Linda Smith testified that she was forcefully abducted from the Plasma Center. Just as she was about to get into her car, Craig West came from behind and overpowered her. He forced her to curl up on the floor of the passenger side, under the dashboard, and he drove off. She went on to assert that Craig West forced her to masturbate on the floor of the car as they drove to a secluded spot in the woods of upper Dauphin County. After parking, Ms. Smith testified that Craig West raped her and had involuntary sexual deviate intercourse. [N.T. 56-59]

Craig West testified that this interlude was completely consensual. She willingly went for a ride after Craig West helped to start her car. [N.T. 304-305] Linda Smith volunteered the masturbation [N.T. 315-316] and was a willing sexual partner. She never indicated to him in any way that she did not want to participle. [N.T. 319]

The jury did not believe that Ms. Smith was forcibly abducted as they found Craig West not guilty of that offense. However, he was found guilty of Rape and Involuntary Deviate Sexual Intercourse.  [N.T. 469]

Appellant's Motion for a New Trial and In Arrest of Judgment were filed on December 11, 1990.  The Honorable Judge Warren G. Morgan denied the Motion on January 29, 1991.  Notice of appeal was filed on May 2, 1991.

Judge Morgan's Opinion concerning denial of appellant's post-verdict motions was filed on June 20, 1991.

This brief is filed in support of Craig West's appeal.

## V.  SUMMARY OF ARGUMENT

The trial court's refusal to allow the appellant to introduce evidence that would contradict the complaining witness' claim of emotional trauma was an abuse of discretion.  At the very least the appellant should have been allowed to present the evidence with a cautionary limiting instruction.  If not allowed as substantive evidence, it is admissible as mere impeachment.

An accused person has a fundamental right to present defense evidence so long as such evidence is relevant and not excludable by an established evidentiary rule.  Further,  it is the function of the jury to determine the weight to be accorded evidence.  In the present case, the jury never had the opportunity to consider rebuttal testimony by the defense that would have had a bearing on the victim's credibility and claim of emotional trauma.

It was error for the trial court to allow the prosecution to use an irrelevant, involuntary, consistent statement as impeachment.  The Court allowed the use of the statement as impeachment after initially suppressing the statement due to violations of the appellant's constitutional rights.  The appellant had a known history of mental health difficulties and made the statement, " I guess I did what they say ... but she consented!"; only after interrogation by the parole officer and other authority figures.  Such an ambiguous statement, made under

illegal and immoral conditions, should not have been allowed as evidence.

At trial, the probation officer vindictively asserted that she had supervised the appellant prior to the case then at bar. Such a statement could only lead the jury to conclude that the appellant had a prior record and a "propensity" to commit crime. It was error for the Court not to declare a mistrial upon those wholly unresponsive remarks.

VI.  ARGUMENT

1.  IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO
DENY THE APPELLANT THE RIGHT TO INTRODUCE EVIDENCE TO REBUT THE
COMMONWEALTH CLAIM THAT TRAUMA-INDUCED HYSTERIA CAUSED UNTIMELY
REPORTING OF THE CRIMES.

At trial Linda Smith testified that she was so traumatized
and hysterical that she could not see her way clear to calling
the police for three (3) days.  The prosecution went to great
lengths to insure that the jury would emphasize with her trauma
and hysteria.  They even called four (4) witnesses [N.T. 178-211]
for the sole purpose of explaining Linda Smith's state of mind on
those intervening days.  Her complaint was untimely and the
prosecution was allowed great latitude in explaining why.

At discovery the appellant was provided with a copy of the
hospital report of Linda Smith when she eventually called the
police.  In that report, attached as Exhibit One, on page two
(emphasis therein added), Linda Smith details that she had sexual
intercourse on the evening after the alleged rape, two (2) days
before she reported it to the police.

At trial the appellant attempted to use the hospital
report to rebut the claim of trauma induced hysteria through
impeachment by conduct.  The following occurred:

    Q.  So your testimony is that as the days went by,
    she was getting worse and worse as Monday to Tuesday,
    Tuesday to Wednesday, Wednesday to Thursday, she
    just kept getting worse and worse?

A.   Right.

Q.   So that Tuesday night she was in worse shape than she was Monday night?

A.   Tuesday night, yes--not Tuesday.  On Tuesday she like tried to ignore it and just wanted to go to work.

Q.   That didn't affect your ability to have your normal sexual relations with her?

    MR. NARVOL:  Objection.

    MR. THORNTON:  May we approach?

    THE COURT:  You may indeed.

    MR. NARVOL:  This is outrageous.

    (Whereupon, the following discussion was held at sidebar:)

    MR. THORNTON:  Your Honor, at this point Mr. Narvol has gone over and over about how upset she was, about how much this bothered her, how much it affected her, how she was crying hysterically.  We went through a whole long litany of this with him.  She told the hospital that she had sex the next night.  Now, obviously she was not upset and if her state of mind is an issue which was indicated that her state of mind is an issue, her state of mind was not that she couldn't have sex the next night.  I wasn't going to ask specifically if she had intercourse.  I was going to ask if it affected your ability to have relations with her on Tuesday.  State of mind has been put in issue here.

    THE COURT:  Is the defense going to be that he didn't have intercourse with her?

    MR. THORNTON:  No, that it is consensual.

    MR. NARVOL:  That's an outrageous insinuation to make in front of the jury.  It is also true that your client is guilty of other sex crimes but the jury is not allowed to hear that because it is just as prejudicial.

    THE COURT:  The point is as I understand the defense is consensual sex so the fact that she had sex at some later time seems to me that--we sustain the objection.

MR. NARVOL:  I would be in a position to make a motion for a mistrial at this point.  For Mr. Thornton to blurt that out and not to come to sidebar.

THE COURT:  No, we are not going to declare a mistrial.  We sustain the objection.  It was totally improper.

(Whereupon, the discussion at sidebar was concluded.) [N.T. 193-195]

Pennsylvania Courts have long held that inconsistent conduct, as well as inconsistent statements, can be used as impeachment evidence.  Commonwealth v. Woods, 275 Pa. Super. 392, 418 A.2d 1346 (1980).  In fact, once properly admitted, inconsistent conduct can be used as substantive evidence as well as impeachment.  Commonwealth v. Brady, 510 Pa. 123, 507 A.2d 66 (1986).  The conduct must only be relevant, authenticated and inconsistent to be admitted.

The appellant sought to introduce evidence that directly impeached the testimony of five (5) prosecution witnesses.  They all testified that Linda Smith was hysterically traumatized for days following the incident.  Evidence that she had returned to normal sexual activity with her boyfriend within twenty-four (24) hours would have impeached that testimony.  It is clearly relevant and inconsistent.  It is also authenticated by her own words to the hospital employees.  [Exhibit #1]

At least the appellant should have been allowed to present the evidence with a cautionary limiting instruction.  If not allowed for substantive proof it is admissible as mere impeachment.

An accused person has a <u>fundamental</u> right to present defense evidence so long as such evidence is relevant and not excludable by an established evidentiary rule. <u>Chambers v. Mississippi</u>, 410 U.S. 284, 302 (1973) (emphasis added); <u>Webb v. Texas</u>, 409 U.S. 95, 98 (1972). Further, it is self-evident that the probative value or weight to be accorded evidence is a function of the factfinder. <u>Commonwealth v. Eubanks</u>, 511 Pa. 201, 210, 512 A.2d 619, 624 (1986). In the instant case, evidence that the victim had consensual sexual intercourse with her boyfriend within 24 hours after the alleged rape occurred is certainly relevant as rebuttal testimony, and it is not excludable by the Rape Shield Law, 18 Pa. C.S.A. §3104. Therefore, it is admissible.

The Pennsylvania Supreme Court, citing McCormick on <u>Evidence</u>, has observed that evidence is relevant if it renders the desired inference <u>more probable than it would be without the evidence</u>. In effect, relevant evidence is evidence that in some degree advances the inquiry, and thus has probative value, and is <u>prima facie</u> admissible. <u>Eubanks</u>, <u>supra</u> at 208, 512 A.2d at 623; <u>Commonwealth v. McCusker</u>, 448 Pa. 382, 388, 292 A.2d 286, 289 (1972) (emphasis in original). In the case at bar, the "desired inference" is that the victim's claim of debilitating emotional trauma is not wholly truthful. Evidence that the victim had consensual sexual intercourse with her boyfriend the day after the incident renders the desired inference more probable than it would be without the evidence. In other words, evidence that the victim engaged in consensual sexual intercourse the day after the

alleged rape advances the inquiry into whether her claim of emotional trauma is valid.

Additionally, it is the function of the jury to weigh the evidence and determine its probative value. Eubanks, supra at 210, 512 A.2d at 624. The jury should be the one to decide whether consensual sex the day after an alleged rape is contradictory to a claim of emotional trauma. In this case, the refusal of the trial court to allow such testimony amounted to a gross usurpation of the jury's function, thereby denying Mr. West a fair trial.

In Judge Morgan's Opinion denying the post-verdict motions, he noted that the appellant's argument concerning the relevance of the victim's consensual sexual intercourse the day after the alleged rape was illogical because human behavior is such that not everyone will react to the same situation in the same way. Therefore, one cannot conclude that rape victims who are emotionally upset are unable to engage in normal sexual activity the day after their rapes. The defense wholly agrees that such a cursory conclusion would be irresponsible. After all, who is the defense (or the prosecution, or the court, for that matter) to say how a rape and its ensuing emotional trauma will affect the ability of a person to engage in normal sexual activity? Instead, wouldn't it be better to allow a jury of twelve diverse, unique individuals to consider the circumstances of the case, along with their own personal experiences, and let them decide whether the evidence in question is relevant and if so, how much weight to place on it?

Admission of this evidence would not offend the Rape

Shield Law, 18 Pa. C.S.A. §3104;

§3104.  Evidence of victim's sexual conduct

(a) General rule - Evidence of specific instances
of the alleged victim's past sexual conduct, opinion
evidence of the alleged victim's past sexual conduct,
and reputation evidence of the alleged victim's past
sexual conduct shall not be admissible in prosecutions
under this chapter except evidence of the alleged
victim's past sexual conduct with the defendant where
consent of the alleged victim is at issue and such
evidence is otherwise admissible pursuant to the rules
of evidence.

(b) Evidentiary proceedings - A defendant who proposes
to offer evidence of the alleged victim's past sexual
conduct pursuant to subsection (a) shall file a written
motion and offer of proof at the time of trial.  If, at
the time of trial, the court determines that the motion
and offer of proof are sufficient on their faces, the
court shall order an in camera hearing and shall make
findings on the record as to the relevance and
admissibility of the proposed evidence pursuant to the
standards set forth in subsection (a).

The Rape Shield Law deals only with past sexual conduct

(emphasis added).  The conduct to be examined here occurred after

the charged offenses and therefore is not "past".  Since it is

not "past", it is admissible, if relevant, and there is no

notification required of the appellant.

Pennsylvania Courts have held that, in certain situations,

evidence of "prior" sexual conduct is admissible even though

consent is not an issue.  Commonwealth v. Majorana, 503 Pa. 602,

470 A.2d 80 (1983); Commonwealth v. Black, 337 Pa. Super. 548,

487 A.2d 396 (1985).  In this matter, the evidence would have

gone directly to prove lack of hysteria and therefore a greater

likelihood that the offenses never occurred at all.  The

exclusion of that evidence unconstitutionally limits the

defendant's right to challenge the credibility of the
Commonwealth's case in general, and their witnesses in specific.
Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347
(1974); also the Pennsylvania and United States Constitutions.

The Rape Shield Law, 18 Pa. C.S. §3104, would not be
offended by allowing admission of the evidence in question.  The
purpose of the Rape Shield Law is to prevent the private,
personal affairs of the victim from being dragged through the
mud.  In the instant case, the defense is not attempting to delve
into the victim's sexual past.  Instead, the appellant is merely
attempting to allow the jury to hear evidence obtained from the
victim's medical report, evidence that would serve to impeach the
victim's statement that she was too emotionally traumatized to
report the incident for three (3) days.

In support of its opinion denying post-verdict motions,
the trial court relied on Commonwealth v. Dickerson, 2 D.&C. 4th
297.  In that case, the rape victim had consensual sexual
intercourse with her boyfriend the morning after the rape, and
prior to reporting the incident to police.  The court held that
evidence of the victim's sexual intercourse with her boyfriend on
the morning after the rape was "past sexual conduct", and rape
was inadmissible due to the Rape Shield Law.  Id. at 301, 302.

Although Dickerson is somewhat similar to the case at bar,
there is a crucial area in which it is distinguishable.  That is,
in Dickerson the victim did not claim that the reason for her
delay in reporting the rape was emotional trauma.  The evidence
concerning the intercourse with her boyfriend the morning after

the rape did not serve to impeach her testimony. However, in the instant case the goal of admitting the evidence regarding the victim's consensual sexual intercourse with her boyfriend the day after the alleged rape is to contradict the victim's claim of emotional trauma. The goal is to impeach, not smear the complaining witness.

Finally, the <u>Dickerson</u> court's interpretation of the language of the Rape Shield Law is not binding on this court. <u>Dickerson</u> held that the inadmissibility of evidence of "past sexual conduct" applies to occurrences taking place after the alleged rape as well as before. The defense renews its disagreement with this interpretation of "past sexual conduct" as that which occurs prior to the incident in question, not subsequent to it. Therefore, the admission of the evidence in this case is <u>not</u> contrary to the letter of the Rape Shield Law.

2. <u>THE TRIAL COURT ERRED BY ALLOWING A COERCED STATEMENT, WHICH WAS SUPPRESSED AS A RESULT OF CONSTITUTIONAL VIOLATIONS, TO BE USED AS IMPEACHMENT.</u>

A few days after he was arrested, the appellant was visited at Dauphin County Prison by his parole officer Kamela Ditty, his mental health case worker Sandra Reisinger, and prison psychologist David Zug. The appellant was not informed of his <u>Miranda</u> right to remain silent. Instead, Kamela Ditty grilled him, demanded a response, and later recalled that the following happened:

> I said Craig, I want to know what--what happened.
> Tell me what happened. He said I don't know where to

begin; and I said begin with July 23rd; and tell me what
happened, and he just sort of hesitated; and then he
looked up at me; and he said I guess I'm guilty of what
they say I--I guess I did what they say I did were his
exact words.  And I said--I said what do you mean; and
he said well I guess I did what they said I did, but
sh--then--then he hesitated again; and then he said
but she consented to it; and I just--I said did she
really consent to it Craig.  And then he said well at
first she did and then I guess she got scared and
didn't like it.  And um, I said well I have a feeling
I know what happened Craig.  I said you took advantage
of the whole situation.  You didn't stop when you were
supposed to stop; and it became a situation where you
threatened her.  And he--I said what are you gonna
plead in this case; and he said I don't at this--I
don't know.  I don't know.  And I said who's your
attorney.  He said I'm not sure yet; and um, he then
at that time then he said it's your fault.  You knew
I had a problem; and I said Craig I made a lot of
different opportunities for you to contact the
Handler (phonetic) Center, which is now Dauphin
County Mental Health Services.  I said and you
never did; and at that time he said Sandy Reisinger
(phonetic) who's his case manager from the Handler
Center was standing with me; and she said--and he
said it's your fault Sandy.  I tried to contact you
and you never returned by calls; and she said Craig
you never tried to contact me.  I would have contacted
you back again.

Although the statement was originally suppressed because

the appellant was not informed of his right to remain silent, the

statement was admitted at trial.  The Court made findings of fact

[N.T. 276-277] and declared that the statement was voluntarily

made.  This finding allowed the statement to be made available

for impeachment purposes pursuant to an amendment to Article I

Section 9 of the Pennsylvania Constitution:  "The use of

suppressed voluntary admission or voluntary confession to impeach

the credibility of a person may be permitted and shall not be

construed as compelling a person to give evidence against

himself."

In the present case, the statement made by Craig West to his parole officer was neither voluntary nor inconsistent, and was therefore invalid as impeachment evidence. The Commonwealth, as well as Judge Morgan's opinion denying post-verdict motions, went to great lengths in describing how the physical circumstances surrounding the meeting between Craig West and his parole officer were such that the statement Craig made to Ms. Ditty must have been voluntary. Craig is significantly larger in size than Ms. Ditty, the conversation took place in an open hallway, etc. However, neither the Commonwealth nor the trial court adequately considered the emotional state of Craig West when confronted by his parole officer. Craig had just spent the last several days in prison. Ms. Ditty, in Craig's mind, was someone who had the power to make sure that he stayed there. Thus, when confronted by Ms. Ditty and her demand for a response, Craig felt compelled to make a statement.

The Court in Commonwealth v. Chacko, 500 Pa. 571, 459 A.2d 311 (1983), observed that in deciding whether a statement has been given voluntarily, all attending circumstances must be considered. These include, inter alia, the appellant's psychological state and "all other conditions present which may serve to drain one's power of resistance to suggestion or to undermine one's self-determination." Id. at 583, 317. Craig West was in a weakened emotional state at the time he gave the statement to Ms. Ditty. He was in prison and was being accused of a very serious crime which he did not believe he committed.

Kamela Ditty, the interrogating parole officer, was specifically assigned to his case because it has been determined that he had mental health difficulties. She had worked with Craig West for some time and had exercised considerable control and authority over him, including numerous threats of re-incarceration.

That day at Dauphin County Prison, Kamela Ditty had with her Sandra Reisinger, the appellant's case manager from the Dauphin County Mental Health Case Management Unit and also David Zug, the chief prison psychologist. Craig West was confronted near his cell with three (3) of the most imposing authority figures in his life at that time. [N.T. 31-33] They knew his mental health background but confronted him anyway without telling him that they were fishing for evidence to use against him at trial and that he had the right to remain silent.

When confronted by a person of authority, who in his mind played a major role in determining his fate, he felt compelled to make a statement. Considering all the surrounding circumstances, it cannot be said that this statement was voluntary.

The questioning by Kamela Ditty was not opened ended or asking for a narrative. Instead, she harangued Craig West and demanded answers. Then, when he was not forthcoming with damaging evidence, she went on to put words in his mouth. "I know what happened, Craig! You took advantage of the whole situation. You didn't stop when you were supposed to stop; and it became a situation where you threatened her." (statement attached as Exhibit#2). These were not the words of the appellant.

A voluntary statement could not result from such coerced, leading and demanding questioning. Rather than treat a known mental health patient with some care and concern they pumped him for inculpatory information and then ran right to the state police. Morally, such conduct is repugnant, legally it should not be condoned.

In addition to being made involuntarily, the statement made by Craig West to Ms. Ditty was not inconsistent with other testimony he offered that Mr. West had maintained throughout the defense of consent. In his statement to Ms. Ditty, Craig said, "I guess I did what they say I did... but she consented..." Although obviously confused, Mr. West is clear on the issue of consent when this statement was taken, as well as during his later testimony.

The trial court abused its' discretion by allowing such a consistent and involuntary statement into evidenced and a new trial must be granted to rectify this wrong.

A.  **THE STATEMENT COERCED BY KAMELA DITTY WAS IRRELEVANT AS IMPEACHMENT AND THEREFORE SHOULD NOT HAVE BEEN ALLOWED INTO EVIDENCE AT ALL.**

The prosecutor asserts that the statement taken by Kamela Ditty is relevant because it is impeachment. However, statements are not automatically admissible merely because the prosecutor calls them impeachment. If the only purpose of evidence is to impeach, then its probative value must be measured against its risk of unfair prejudice to determine relevance. Commonwealth v.

Boyle, 498 Pa. 486, 447 A.2d 250 (1982). The courts have held
that the need for impeachment limited to certain points may
easily be outweighed by potential unfair prejudice. Commonwealth
v. Niemetz, 282 Pa. Super. 431, 422 A.2d 1369 (1980).

The jury verdict herein shows undeniably that evidence had
an extreme prejudicial impact and was used substantively by the
jury in spite of the limiting instruction. Linda Smith testified
that she was forced through every inch of the occurrence. She
was forced into the car, forced to go to the woods, forced to
masturbate herself and forced to perform sexual acts. Craig West
testified that everything was consensual. How then did the jury
find Craig West not guilty of kidnapping, but guilty of rape and
involuntary deviate sexual intercourse?

There is only one explanation for the verdict. It was
directly in sync with the suppressed statement to Kamela Ditty
which was only to be used for impeachment. Kamela Ditty
confronted the appellant with her idea of what happened on that
night: "I have a feeling I know what happened Craig. I said you
took advantage of the whole situation. You didn't stop when you
were supposed to stop; and it became a situation where you
threatened her." Neither the appellant nor the victim adopted
this "Ditty" version of events. Nevertheless, the jury found
exactly that; Craig West did not force her to go to the woods
(kidnapping) but once there he forced her into sex.

It is obvious that the jury did not apply the limiting
instruction. [N.T. 333-336] Their verdict makes the danger of
"suppressed impeachment" very clear. Courts have always tried to

make sure that a decision is not made on an unfair basis, but that occurred here. The prejudicial impact far outweighed the probative value. When the prosecutors need is balanced against the unreliability of the statement, the lack of inconsistency, the fact that no statement was actually made by the appellant, and its' prejudicial impact, it is certain that an error has been made and a new trial must be granted.

Finally, early in the trial [N.T. 24, lis. 8-12] the prosecutor indicated that he would only present part of the statement as evidence at trial. That statement was reiterated later at trial. [N.T. 333-336] When the time came, however, the prosecutor went much further. He used the entire statement. [N.T. 356-367]

Justice has not been done for Craig West.

3. THE TRIAL COURT ERRED BY NOT DECLARING A MISTRIAL UPON NON-RESPONSIVE REMARKS OF A PAROLE OFFICER WHO TESTIFIED THAT SHE HAD PREVIOUSLY SUPERVISED THE APPELLANT.

It is well established that evidence of "other crimes" is inadmissible at trial, with a few exceptions. Indeed, prejudice results where testimony "conveys to the jury either expressly or by reasonable implication the fact of a prior criminal offense." Commonwealth v. Gaerttner, 335 Pa. Super. 203, 218, 484 A.2d 92, 100 (1984) (citing Commonwealth v. Nichols, 485 Pa. 1, 400 A.2d 1281 (1979).

During cross-examination of the appellant's parole officer, she made a non-responsive remark stating that she had previously supervised the appellant:

Q. Clearly you have no idea what was going on with Mr.
West before he came out of his cell to see you, do you?

A. No, not offhand.

Q. So you couldn't really tell us if he was in distress
or what happened to him before he spoke to you?

A. Well, I am familiar with the client. I have been
dealing with him for an extended amount of period.
So not to my knowledge, I did not see anything.

Q. I asked you specifically if you know what was
going on in the cell beforehand?

A. No.

[N.T. 438]

In his post-trial motions, appellant requested a new trial

because the testimony of Ms. Ditty amounted to evidence of "other

crimes" and thereby unjustly prejudiced the appellant. In his

opinion denying post-trial motions, Judge Morgan held that the

appellant was not entitled to a new trial because the remark in

question was elicited by defense counsel, because the remark did

not clearly demonstrate prior criminal activity, and because a

curative instruction was given before the remark was made.

Although it is true that defense counsel was cross-

examining Ms. Ditty when she made the remark in question, it was

not "elicited" by defense counsel. The question posed to Ms.

Ditty when the prejudicial response was made dealt with whether

Ms. Ditty knew what was going on in Craig West's cell prior to

Ms. Ditty's visit. Her remark was non-responsive, and it would

be unjust to hold a prejudicial, non-responsive remark against

the appellant merely because defense counsel was asking questions

when the remark occurred.

Judge Morgan decided that no reasonable juror would infer prior criminal activity from the remark in question.  The defense disagrees with this conclusion.  In effect, the jury heard a statement by a person that the prosecution had referred to as a "court employee" who said that she had been dealing with the appellant for an extended period.  Although the jury was instructed that Ms. Ditty should have been referred to as merely an "employee of Dauphin County", it is impossible to determine the impact that the label "court employee" made on the minds of the jurors.  Therefore, a juror could have easily inferred that the appellant had been involved in other criminal acts.

This was nothing more than an attempt to smear the appellant with the sticky slime of propensity.  The parole officer purposefully wafted an improper innuendo into the jury box.  Clearly, the prosecution hoped that the jury would ignore the evidence offered and convict solely on propensity.  A new trial is the only remedy for such purposeful, outrageous conduct.

## VII.  CONCLUSION

Craig West was denied a fair trial.  He was not permitted to present evidence that would contradict testimony that the complaining witness gave against him.  In addition, the jury was denied the opportunity to hear and evaluate the proposed evidence, and decide for themselves how much weight to afford it.

The defense is fully aware of the letter and purpose of the Rape Shield Law, however it does not apply in this case. Admission of the hospital record which states that the victim had consensual sexual intercourse the day after the alleged rape will not smear or impair the reputation of the victim.  Further, it is not "past" sexual conduct under the statute. It occurred _after_ the incident, not before.

Appellant respectfully requests This Honorable Court to vacate the judgment and discharge appellant, or in the alternative, appellant requests he be granted a new trial.

Respectfully submitted,

Thomas A. Thornton
Chief Deputy Public Defender
Attorney for Appellant

RECEIVED JUN 2 0 1991

*Tom Thornton*

COMMONWEALTH OF PENNSYLVANIA :   IN THE COURT OF COMMON PLEAS
                                  :   DAUPHIN COUNTY, PENNSYLVANIA
                                  :
              VS.                :
                                    :
CRAIG ALLEN WEST                :   NO. 2283 CD 1990

## OPINION

A jury convicted the defendant, Craig Allen West, of
rape and involuntary deviate sexual intercourse on December 7,
1990, at the conclusion of a five day trial. (The same jury
found the defendant not guilty of kidnapping.) The defendant
filed his Motion for a New Trial and in Arrest of Judgment on
December 11, 1990. We denied this motion by means of an Order
dated January 29, 1991. Having received notice of the
defendant's appeal to the Superior Court of Pennsylvania, we
now write this Opinion in accordance with Pennsylvania Rule of
Appellate Procedure 1925(a).

The defendant raises three issues. First, the
defendant argues that we erred when we refused to allow his
attorney to ask the victim's fiance, on cross-examination,
whether the attack affected the fiance's ability to have
sexual relations with the prosecutrix the following evening.
Second, the defendant argues that we erred by allowing the
Commonwealth to introduce, as rebuttal, a prior inconsistent
statement which we had previously suppressed because it was
elicited in violation of the Miranda rule. Finally, the
defendant argues that a statement made, as testimony, by the

defendant's parol officer was inadmissible evidence of other crimes.

We first examine the defendant's argument that we erred when we refused to allow the defense attorney to ask the victim's fiance whether the attack affected his ability to have sexual relations with the prosecutrix the next evening. We refused to allow this testimony for two reasons. First it is irrelevant. Second, allowing the testimony would violate Pennsylvania's "Rape Shield Law", 18 Pa.C.S.A. § 3104.

"The fundamental consideration in determining the admissibility of evidence is whether the proffered evidence is relevant to the fact sought to be proved. Evidence is relevant if it tends to make a fact at issue more or less probable." Martin v. Soblotney, 502 Pa. 418, 422, 466 A.2d 1022, 1024 (1983).

Whether the victim consented to sexual intercourse with the defendant constituted the principal issue in the case at bar. Attempting to demonstrate consent, the defendant showed that the victim waited until three days after the attack before she reported the crime to the police.[1] Upon cross-examination, she described the evolution of her decision, over the course of three days, to report the incident (N.T. 175-78). She claimed that her emotional trauma

---

[1] The legislature has specifically provided for the introduction of such evidence. 18 Pa.C.S.A. § 3105.

caused the delay.  In order to impeach her claim of emotional

trauma, the defense attorney sought to ask the victim's fiance

whether the attack affected his ability to have sexual

relations with her the next day (N.T. 194-95).[2]

As a matter of logic, this impeachment attempt rests

upon the premise that rape victims who are emotionally upset

and fearful of reporting their attacks to the police tend to

be unable to engage in "normal" sexual activity with their

lovers on the day following their rapes.  This premise lacks

logical validity.  The human psyche remains a wonderful, but

enigmatic entity.  Classicists demonstrate the uniformity of

human behavior through the ages, and psychologists demonstrate

the variety of behavioral response, but no scholar seems

likely to prove the proposition that rape victims whose trauma

delays their reports to police tend to be unable to return

shortly to their sexual norm. , As another Pennsylvania trial

court recently stated:

> One's continuing reaction to the trauma
> of sexual assault is not readily capable of
> prediction.  Such reaction is a very personal
> thing which will vary from victim to victim.
> It is dependent upon the sensibilities and
> sensitivities of the individual involved, her
> lifestyle, how she views matters of morals,
> sex and sexual intercourse, and a multitude
> of other factors not easily capable of

---

[2] The defense had learned that they had had sexual intercourse
the evening after the attack from the hospital report.
Incidentally, this information is normally not discoverable by
means of pre-trial motions.  Commonwealth v. Dear, 342 Pa.
Super. 191, 492 A.2d 714 (1985).

identification or evaluation.  We could
reasonably expect the reaction of a
prostitute or one who regularly engages
in a smorgasbord of sexual activity on a
recreational basis to be quite different
from one who would find such activity
morally offensive and shocking.  In order
to attempt to ascribe evidentiary value
to a victim's reaction, you should know
the victim.

Commonwealth v. Dickerson, 2 D. & C. 4th 297, 308-09 (C.P.

Dela. 1989).

We agree with Judge Surrick, of Delaware County,

"that the fact that the victim of this sexual assault reacted

to her ordeal by seeking physical companionship and love" is

irrelevant.  Id. at 309.  Moreover, we also agree with him

that "to the extent one may think it relevant, its minimal

probative value is far outweighed by its prejudicial effect."

Id.

Furthermore, even if such evidence were admissible

as logically and legally relevant, its admission would be

contrary to Pennsylvania's Rape Shield Law, 18 Pa.C.S.A.

§ 3104.  Section 3104 refers to evidence concerning rape

victims' "past sexual conduct."  The defendant argues that

this term refers only to conduct occurring prior to a rape,

not to conduct occurring prior to the introduction of the

testimony at trial.  In other words, according to the

defendant, the statute does not preclude testimony about the

sexual conduct of rape victims during the interval between the

rape and the trial.

Like the case at bar, _Dickerson_ involved an attempt by a defendant in a rape case to elicit testimony that the victim had sexual relations with her boyfriend the day after her attack. The Delaware County court held that "past sexual conduct," as used in section 3104 does include conduct occurring after the alleged rape. _Dickerson_ at 304. We concur with this conclusion, and we adopt the reasoning of that court that sections 553, 551, and 552 of the Statutory Construction Act[3], read in conjunction with the dictionary-definition of "past," lead to the conclusion that "no logical reason" exists "to restrict the meaning of the word 'past' as used in section 3140 to a particular or specific time before the present." In other words "past conduct" means conduct before the present. During trial, "past conduct" means conduct occurring before each moment at the trial. It thus includes conduct prior to any moment during which a defendant seeks to introduce such testimony. Finally, we agree that to interpret the statute in the manner suggested by the defendant

> would be to defeat the obvious intent of
> the legislature and to create an absurd
> and unreasonable result. Defendant's
> proffered interpretation of section 3104
> disregards completely the occasion and
> necessity for the law, the circumstances
> under which it was enacted, the mischief
> to be remedied and the object to be

---

[3] 1 App., 1 Pa.C.S.A. §§ 1501 to 1991. The section referred to in the text, formerly found in title 46, may presently be found, recodified, at _id._, §§ 1923, 1921, and 1922, respectively.

> obtained.  Evidence of the victim's
> sexual conduct between the date of the
> attack and the trial is just as
> embarrassing, just as traumatic and just
> as abusive as evidence of sexual conduct
> prior to the attack.  And its probative
> value is just as minimal.  Defendant's
> argument is without merit.

Id. at 305-06.

We further note that in the case before us the

defendant argues only that the Rape Shield Law does not apply;

he does not argue that he satisfied its procedural

requirements or either of its two exceptions.  In summary, the

defendant's proffered testimony lacked logical relevance, it

lacked legal relevance because of its prejudicial nature, and

it was proscribed by the Rape Shield Law.

The second issue raised by the defendant concerns

our factual finding that the defendant voluntarily made an

inculpatory statement to his probation officer while he was

incarcerated before trial.  Since we determined that this

statement was made voluntarily, we allowed the prosecution to

use it to impeach the defendant's credibility pursuant to

Article I, Section 9 of the Constitution of Pennsylvania.

As we pointed out previously, the principal issue in

this case was consent.  At trial, the prosecutrix claimed she

was raped, while the defendant claimed, in essence, that he

was seduced (N.T. 300-24).  Thus, the credibility of the

defendant (as well as that of the prosecutrix) was at issue.

Consequently, the defendant's inculpatory statement--"I guess

I did what they said I did . . . but she consented to it"--
impeached his testimony that the prosecutrix precipitated the
sexual acts.

After the opening statements but before the
testimony commenced, we considered the defendant's motion in
limine (N.T. 13-41). One of the issues we considered was the
admissibility of the defendant's statement to his probation
officer (N.T. 21-41). The prosecution agreed that the <u>Miranda</u>
warnings were not given before the statement was made (N.T.
22). However, the Commonwealth and the defendant disagreed
about whether the statement was voluntarily made (N.T. 23).
Consequently, we suggested that the probation officer be
called upon to testify about the circumstances surrounding the
defendant's statement (N.T. 25).

The probation officer testified that she had
supervised the defendant for about fifteen months before he
made the statement (N.T. 26-27), that she is four feet eleven
and one half inches tall, weighs about 105 pounds, and that
during the approximately twenty-two meetings she had
previously held with the defendant, he had never made any
statement suggesting that he feared her (N.T. 26-27). She
testified that he was forthright with her and that he was
"very calm" in her presence (N.T. 27).

The defendant's probation officer then testified
about the circumstances surrounding the making of the
inculpatory statement. She stated that she met with the

defendant in a "pretty wide" hallway in the prison, and that no guards were standing with them (N.T. 30). Also present were the defendant's mental health case-worker and the prison psychologist (N.T. 31). However, these two were otherwise engaged in conversation (N.T. 31). The probation officer testified that she noted nothing unusual about the defendant's appearance (N.T. 31).

The probation officer had gone to the prison to present the defendant with a notice alleging that he violated his parole conditions (N.T. 32). She then testified that she said

> Craig, what happened? What happened and basically he just looked like he didn't know what he was going to say next. I said, Craig, what happened? He said, I don't know where to start and that's when I said start with July 23, 1990 and tell me from there and then that's when he went on to say, I guess I did what they say I did.

> And that just threw me off guard. I said, what do you mean? Then he said, I guess I did what they say I did. Then he hesitated and he said, but she consented.

(N.T. 32-33).

Later, we reconvened the evidentiary hearing on this matter (N.T. 232-278). The probation officer gave additional testimony. She testified that the guard was not present, that her conversation with the defendant lasted for "probably a minute maximum," and she did nothing to threaten the defendant (N.T. 234), who did not appear to be under any distress (N.T. 234-35). The probation officer spoke to the defendant in a

"normal" tone of voice (N.T. 238). She stated that she
"didn't know exactly what was going on" until after he made
the statement (N.T. 241). Then, her tone became accusatory
(id.). Still, the defendant remained calm, even though he had
cried in her presence on previous occasions (N.T. 242).

The defendant's mental health case manager also
testified. Addressing her relationship with the defendant,
she stated: "Craig and my relationship was always rather
casual. I wasn't in the role to be authoritarian. I wasn't
his therapist. I wasn't in the role of judgment. I was in a
role to help Craig set up appointments that he needed. It was
very basic" (N.T. 266). She testified that she and the
probation officer had visited several mutual clients and that
the prison psychologist was walking toward them, but was not
with them (N.T. 267). She also stated that the guard was some
distance away, that the defendant appeared calm and that he
did not appear to be distressed (N.T. 267-68). She stated
that the conversation at issue was of short duration and that
the defendant was not threatened in any way (N.T. 269).

After considering all of the testimony regarding
these events, we made our findings of fact (N.T. 276-77).
These included determinations that "[a]t the time of his
responses to the inquiry, the defendant was composed, there
was no appearance of any physical or mental distress. [The
probation officer] had made no promises or threats to him, nor
was there any other conduct of a coercive nature on the part

As we noted on the record, we have serious apprehensions about these events (N.T. 34). Probation officers should refrain from questioning defendants about pending charges. As the defendant's cross-examination of these witnesses show, probation officers exert supervisory authority over their clients and they may request that probation be revoked, thus returning clients to prison (N.T. 246-47). Also, the three people present at the time were authority figures (N.T. 249). Nevertheless, in view of the circumstances surrounding the statements, we conclude that the defendant made his statements voluntarily. Consequently, the statement was admissible for purposes of impeaching the defendant's testimony, as we instructed the jury (N.T. 367).

Finally, the defendant argues that a statement made during testimony by the probation officer constituted evidence of other crimes, and that we erred in refusing to grant a mistrial. This constitutes a two-part argument, and we disagree with the defendant's conclusions concerning each part. First, we disagree that the statement complained of constituted evidence of other criminal activity. Earlier, the jury had only heard the defendant's probation officer described as a county employee. Then, the prosecutor referred to her as "employee of the Court" (N.T. 433). We immediately admonished the jury that she "is more properly referred to as an employee of Dauphin County and no particular weight is to be given to her testimony by reason of the reference to her as

a Court employee (N.T. 435).  Subsequently, on cross-examination, she responded "[w]ell I am familiar with the client.  I have been dealing with him for an extended amount of period [sic]" (N.T. 438).

At the threshold, we must determine whether a juror "'could reasonably infer from the facts presented that the accused had engaged in prior criminal activity.'" Commonwealth v. Shepherd, 269 Pa. Super. 291, 294, 409 A.2d 894, 895 (1979) (quoting Commonwealth v. Allen, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972).  We remain confident that our curative instruction, given before the reference at issue, would have resulted in the jury viewing the probation officer merely as a county employee.  This expunged any taint with respect to the reference to her as a court employee. Commonwealth v. Williams, 470 Pa. 172, 178, 368 A.2d 249, 252 (1977).  However, even if the jury disregarded our instruction, and did view her as a "court employee" the enigmatic statement that the probation officer had dealt with the defendant for an extended period seems unlikely to allow a reasonable juror to reasonably infer prior criminal activity. Such a juror could likely conclude that a civil matter, such as child support, was involved.

Second, even if a juror did infer that the defendant had engaged in prior criminal activity, a new trial is not warranted.  As Chief Justice Nix has stated, even when trial courts exercise every possible caution, evidence of prior

criminal activity may impregnate a trial. <u>Commonwealth v. Gaerttner</u>, 335 Pa. Super. 203, 229, 484 A.2d 92, 106 (1984) (quoting <u>Commonwealth v. Williams</u>, 470 Pa. at 178, 368 A.2d at 252 (Nix, C.J.)).

Here, a new trial is not warranted. Importantly, the defense counsel elicited the remark. <u>Cf. Gaerttner</u> at 229, 484 A.2d at 106. Second, the remark did not clearly demonstrate prior criminal activity. <u>Cf</u>. <u>id</u>. at 228-29, 484 A.2d at 106. Third, we gave a currative instruction breaking the logical chain before the contested remark was made, a factor of "great import." <u>Id</u>. In view of these factors, the defendant was not denied a fair trial. <u>Id</u>.

For the foregoing reasons we entered the following

### ORDER

AND NOW, March 25, 1991, the defendant's post verdict motions are denied and the District Attorney is directed to present him for sentencing.

*Warren G Morgan*
_____
Warren G. Morgan, P.J.

OPINION DATED: *June 20, 1991*

Distribution:

Todd B. Narvol, Chief Deputy District Attorney
Thomas A. Thornton, Chief Deputy Public Defender
Institution
Defendant

Certified: A True Copy

19___

EXHIBIT "1"

Time Out: _____ 457

| DESCRIPTION | DESCRIPTION | DESCRIPTION | TIME/INIT. | DESCRIPTION | TIME/INIT. | DESCRIP |
|---|---|---|---|---|---|---|
| ☑ E.D. Visit II | ☐ Dsg. I | ☐ O² ___ L/M | | ☐ Urimeter | | X-RAY: |
| ☐ ABG | ☐ Dsg. II | ☐ O² - port. | | LAB: RPR  HIV | | |
| Ace - in. ___ # | ☐ EKG | ☐ Phila. collar | | HCG | | |
| ☐ Angiocath | ☐ Evidence Kit | ☐ Shld. immob. ___ | | Cervical Clx  GC  Chlamydia | | |
| ☐ Cardiac Monitor | ☐ Female cath | ☐ Sling ___ | | I.V. & MED: | | MISC: |
| ☐ Cath tray comp. | ☐ Foley | ☐ Splint ___ | | Rocphin 250 m Im  1440 66 | | |
| ☐ Cast ___ | ☐ Hematest +. — | ☐ Suction | | (1450) | | |
| ☐ Cerv. collar-soft | ☐ Ice Bag ___ | ☐ Sut. rem. kit | | DC Home | | |
| ☐ Clav. strap | ☐ I/D Tray | ☐ Suture tray ___ | | | | |
| ☐ Crutches | ☐ Knee immob. ___ | ☐ Vag. Exam | | MB Maxim | | |
| ☐ Dinamap | ☐ Minor eye supply | ☐ I VAC # ___ | | | | |
| ☐ Drainage bag | ☐ Obs. area ___ hrs. | ☐ Wet prep | | | | ☐ Trauma A |

**AUTHORIZATION TO TREAT;** STATEMENTS ON THIS FORM ARE TRUE TO THE BEST OF MY KNOWLEDGE, AND I HEREBY AUTHORIZE THE PHYSICIAN OR PHYSICIANS IN CHARGE OF THIS CASE OF THIS PATIENT TO ADMINISTER ANY TREATMENT, TO ADMINISTER SUCH ANESTHETICS AND PERFORM SUCH OPERATIONS AS MAY BE DEEMED NECESSARY OR ADVISABLE IN THE DIAGNOSIS AND TREATMENT OF THIS PATIENT

Relationship to patient _____

SIGNATURE _Linda C Smith_   PATIENT-CLOSES RELATIVE OR LEGAL GUARDIAN   WITNESS

**AUTORIZACION PARA DAR TRATAMIENTO;** LO ESTABLECIDO EN ESTA FORMA ES LO MEJOR DE MI CONOCIMIENTO, AUTORIZO AL MEDICO O MEDICOS ENCARGADOS DE ESTE CASO Y PACIENTE A ADMINISTRAR CUALQUIER TRATAMIENTO O A ADMINISTRAR Y LLEVAR A CABO CUALQUIER OPERACION QUE SEA NECESARIA O ACONSEJABLE EN EL DIAGNOSTICO Y ACERCA DEL TRATAMIENTO QUE HE DE SEGUIR

Parentesco del paciente _____

FIRMA _____   PACIENTE-PADRES GUARDIAN LEGAL   TESTI

| F ACCIDENT, WHERE OCCURED | | 7/23/98 @ 500 hrs | MEANS OF ARRIVAL _well_ Rael Cars | BY WHOM TRANSPORTED | CO |
| G PER PT/SIGNIFICANT OTHER _NKR_ Alleged Sexual assault | | 1330 F | FAMILY PHYSICIAN _Jeffries_ | CALL ☐  DO NOT CALL ☐ | ☐ P |

IME IN DEPT _1520_    TRUE DR. IN _____    VITAL SIGNS   T-    PO    AX    R    P-    R-    BIP- (L)

PHYSICIAN'S REPORT (HIP, IMPRESSION - TX)    ALLERGIES: NKDA, SEE
    TETANUS: > 5YEARS, <

Sutured Lip vt

CONSULT T
NAME:
TIME:
Dictated
Time

GNOSTIC IMPRESSION  _Alleged Sexual Assault_    DISCH. ☐  ADMIT ☐
    FOLLOW-UP REFERRAL    DIS
    ICD # CODE    OT

YSICIAN'S ASSISTANT-MEDICAL STUDENT    E D PHYSICIAN    OTHER

SIDENT _MB Maxim MD_    PRIVATE PHYSICIAN    NURSE _Bn_

| GUARANTOR NAME AND ADDRESS | | | GUARANTOR EMPLOYER INFORMATION | |
|---|---|---|---|---|
| MITH, LINDA J | | | RHOADS & SINOH   7999 | |
| 28 RENO ST, NEW CUMBERLAND | | | 1 S MARKET SQ, HARRISBURG | PA |
| A 17070   PHONE NO  717 774-0850 | | | LEGAL SEC | |

| NOTIFICATION — NAME AND ADDRESS | REL F | PATIENT EMPLOYER INFORMATION | |
|---|---|---|---|
| AM BLACK | | RHOADS & SINOH   7999 | |
| 25 RENO ST, NEW CUMBERLAND | | 1 S MARKET SQ, HARRISBURG | PA |
| A 17070   PHONE NO  717 774-1118 | FAMILY NOTIFIED [YES] [NO] | LEGAL SEC | |

| TIENT CASE NO. | DATE | TIME | AGE | DATE OF BIRTH | SEX | MS | RACE | PATIENT S S. NO. | RL | FC | MEDICAL REC. NO. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 161909347 | 07/26/96 | 12:03 | 46 | 09/12/49 | F | S | W | 199400615 | E | C | 199400615 |

HISTORY AND PHYSICAL: Patient is a 40-year-old gravida 2, para 2002, with last menstrual period 7/12/90, who presents to Harrisburg Emergency Room after an alleged sexual assault 7/23/90 at approximately 8:30 p.m. Patient presents today without complaints. As per patient, she was at a plasma donor center at approximately 7:30 p.m. on the evening of 23rd of July. After leaving the center, she approached her car and was grabbed from behind. The alleged assailant grabbed the victim's throat and forced her into a car. Patient describes that she was then thrown to the floor of the car and the alleged assailant drove the car away. Patient reports being driven to an isolated spot, where she was forced to undress. Patient describes an hour or two long ordeal, during which time she was forced to perform oral sex with the alleged assailant. She also reports alleged forceful anal and vaginal intercourse. Patient denies that any ejaculation occurred. She denies that any other devices were used by the assailant. She reports that the assailant was unarmed. The victim reports no other injuries aside from bruising and soreness around her neck from repeatedly being forcefully held around the neck. She also describes bruising on the medial of her left lower extremity secondary to being forcefully pushed against the dash of the automobile. After the alleged sexual assault occurred, the patient was told to redress. She was then forced back into the car, and the alleged assailant drove the automobile back to the plasma donating center. The alleged assailant then left, and the victim returned home. Since the day of the alleged assault on the 23rd of July, the patient has bathed, defecated, urinated and changed clothes. She has subsequently had intercourse, most recently 7/24/90. Patient describes her most recent intercourse prior to the alleged assault as 7/22/90. Patient presents today with only a complaint of left lower extremity bruising. She denied any other problems.

Physical examination: Her vital signs were stable and she is afebrile. Her HEENT is within normal limits. She was normocephalic, atraumatic. Her pupils were equally round and responsive to light and accommodation. Her extraocular movements were intact. Her conjunctivae were pink and moist. Her sclerae were anicteric. Her nose and throat were without lesions. Neck exam revealed neck to be supple with free range of movement and no lymphadenopathy. No lesions or bruising were noted. Cardiac exam revealed regular rate and rhythm with normal $S_1$ and $S_2$. No rubs, clicks or murmurs were appreciated. On lung exam, lungs were clear bilaterally, with no wheezes, rales or rhonchi. Abdominal exam revealed the belly to be soft, nontender, nondistended, with good bowel sounds. No masses were appreciated. Extremity exam revealed no cyanosis, clubbing or edema, and no calf tenderness. Neurologic exam revealed cranial nerves II-XII, motor and sensory, to all grossly intact. Pelvic exam revealed normal female external genitalia. The cervix and vagina were without lesions. The uterus was normal size, and the adnexa were without masses and were nontender. Rectovaginal examination confirmed the above.

TREATMENT: Laboratory values obtained included cervical cultures for Gonorrhea and Chlamydia, and blood work for an RPR and HIV. An HCG was also obtained. Patient was given the option of antibiotic prophylaxis, which she accepted, and was given Rocephin 250 times one.

CONTINUED ON NEXT PAGE



**HARRISBURG HOSPITAL**
A CAPITAL HEALTH SYSTEM HOSPITAL

Second Century
of Caring

EMERGENCY DEPARTMENT

PHYSICIAN REPORT

PATIENT IDENTIFICATION

SMITH, LINDA                    ED      C
428 RENO ST, NEW CUMBERLAND
PA 17070  09/12/49      1619093471
EMERGENCY ROOM ASSOC       ADM 07/
S S # 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 MR#      19940061

EXHIBIT "2"

## INTERVIEW OF KAMELA Y. DITTY

### AUGUST 9, 1990

TROOPER BROWN: Today's date is 8-9-90, Troop "H", Harrisburg. Trooper John R. BROWN to interview Kamela, that's K-a-m-e-l-a, middle initial Y., last name DITTY, D-I-T-T-Y, W/N/F-22, 112 Market Street, Harrisburg, PA 17108, which is the Adult Probation Office; and her phone number is 255-2672. Okay, Miss DITTY, how long have you been, ah, the Probation Officer, ah, taking care of Craig WEST?

DITTY: Ah, since May of 1989.

TROOPER BROWN: Okay, and during the course of that time, why were you his agent? What kind of charges was being ah . . .

DITTY: Okay, he was--I was currently supervising him for an Indecent Exposure charge, and um, in May was when he had just gotten released from Constant 90.

TROOPER BROWN: So he spent--how much time did he spend in ~~Constant~~ *CONCEPT* 90?

DITTY: Four months.

TROOPER BROWN: And that was for drugs and alcohol?

DITTY: Right, drug and alcohol (inaudible).

TROOPER BROWN: Okay. Um, were you aware of any sexual misconduct other than Indecent Exposure relative, ah, Craig WEST?

DITTY: Not, no, not at this time. I--I didn't become aware of any of that until April of 1990.

TROOPER BROWN: And what did you learn in April of '90?

DITTY: Um, April, 1990, I had gotten a call from Jane STERBA (phonetic) from Gaudenzia, who had been working with Craig on an out-patient basis; and she told me Craig had become suicidal because he was caught fondling a young woman; and Craig had later said it was his girlfriend's sister's daughter; and then Craig had come on April 16th, 1990; and him and I sat down; and he admitted to me that he had done this. Um, he apparently had crawled in bed with this-- with this young girl and turned over and was going to fondle her or started to fondle her; and he had said don't tell and everything and apparently she had told her mother or her aunt; and Craig was made aware of it; and that was why on, um, the 16th he had contacted Jane STERBA (phonetic), apparently was drinking and said he was gonna try to commit suicide and kill himself.

TROOPER BROWN: Okay, that was Jane STERBA?

DITTY: Yeah.

COMMONWEALTH OF PENNSYLVANIA   :  IN THE SUPERIOR COURT OF PENNA.
                                   :  FOR THE HARRISBURG DISTRICT
            V.             :
                                   :
CRAIG A. WEST                :  NO. 269   HBG. 1991

## Certification of Service

     I hereby certify that I am this day serving the foregoing document upon the person(s) and in the manner indicated below which service satisfies the requirements of Pa. R.A.P. 121:

Service in person as follows:

Kathy Wingert, Esquire (717) 255-2770)
District Attorney's Office
Dauphin County Courthouse
Harrisburg, PA  17108

Dated:  August 12th, 1991

_Thomas A. Thornton_
Thomas A. Thornton, Esq. Attorney Registration No. 44208
Veterans Memorial Bldg.
112 Market Street
P. O. Box 1295
Harrisburg, PA  17108-1295
Counsel for Appellant
(717) 255-2746

**APPENDIX "B"**

J. S40019/91

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                   :         PENNSYLVANIA
           VS             :
                   :
CRAIG WEST,               :
         Appellant     :     No. 269 Harrisburg 1991

           Appeal from the Judgment of Sentence of April
           22, 1991 in the Court of Common Pleas of
           Dauphin County, Criminal No. 2283 CD 1990

BEFORE: CAVANAUGH, CIRILLO and BROSKY, JJ.

MEMORANDUM:                      FILED: DECEMBER 3, 1991

       This is an appeal from a judgment of sentence entered in
the Court of Common Pleas of Dauphin County. We affirm.

      •    Appellant Craig Allan West was convicted by a jury of
rape and involuntary deviate sexual intercourse. West was
sentenced to pay the costs of prosecution and to serve a term of
imprisonment of five to ten years for each offense, with the
sentences to run consecutively. After his motions in arrest of
judgment and for a new trial were denied, West filed this timely
appeal.

        West raises three issues for our consideration:

        1. Whether it was an abuse of discretion for
        the trial court to deny the appellant the
        right to introduce evidence to rebut the
        Commonwealth claim that trauma-induced
        hysteria caused untimely reporting of the
        crimes?

        2. Whether the trial court erred by allowing
        an involuntary, irrelevant, consistent
        statement to be used as impeachment after it
        had been suppressed as a result of a violation
        of the appellant's constitutional rights?

        3. Whether the trial court erred by not
        declaring a mistrial upon non-responsive

J. S40019/91 - 2

remarks of a parole officer who testified that
she had previously supervised the appellant?

After reviewing the parties' briefs, the record and the

relevant case law, we conclude that the well-reasoned opinion

written by the Honorable Warren G. Morgan thoroughly, properly an

eloquently disposes of the issues presented in this appeal.

Therefore, we affirm the judgment of sentence based upon Judge

Morgan's opinion, a copy of which is attached for purposes of

allocatur.

Judgment of sentence affirmed.

JUDGMENT ENTERED
DATED: December 3, 1991

*Millard E. Williamson*
Deputy Prothonotary

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
                                                    : DAUPHIN COUNTY, PENNSYLVANIA
                                                    :
              VS.                                   :
                                                    :
                                                    :
CRAIG ALLEN WEST                          : NO. 2283 CD 1990

## OPINION

A jury convicted the defendant, Craig Allen West, of

rape and involuntary deviate sexual intercourse on December 7,

1990, at the conclusion of a five day trial. (The same jury

found the defendant not guilty of kidnapping.) The defendant

filed his Motion for a New Trial and in Arrest of Judgment on

December 11, 1990. We denied this motion by means of an Order

dated January 29, 1991. Having received notice of the

defendant's appeal to the Superior Court of Pennsylvania, we

now write this Opinion in accordance with Pennsylvania Rule of

Appellate Procedure 1925(a).

The defendant raises three issues. First, the

defendant argues that we erred when we refused to allow his

attorney to ask the victim's fiance, on cross-examination,

whether the attack affected the fiance's ability to have

sexual relations with the prosecutrix the following evening.

Second, the defendant argues that we erred by allowing the

Commonwealth to introduce, as rebuttal, a prior inconsistent

statement which we had previously suppressed because it was

elicited in violation of the <u>Miranda</u> rule. Finally, the

defendant argues that a statement made, as testimony, by the

defendant's parol officer was inadmissible evidence of other

crimes.

        We first examine the defendant's argument that we

erred when we refused to allow the defense attorney to ask the

victim's fiance whether the attack affected his ability to

have sexual relations with the prosecutrix the next evening.

We refused to allow this testimony for two reasons.  First it

is irrelevant.  Second, allowing the testimony would violate

Pennsylvania's "Rape Shield Law", 18 Pa.C.S.A. § 3104.

        "The fundamental consideration in determining the

admissibility of evidence is whether the proffered evidence is

relevant to the fact sought to be proved.  Evidence is

relevant if it tends to make a fact at issue more or less

probable."  <u>Martin v. Soblotney</u>, 502 Pa. 418, 422, 466 A.2d

1022, 1024 (1983).

        Whether the victim consented to sexual intercourse

with the defendant constituted the principal issue in the case

at bar.  Attempting to demonstrate consent, the defendant

showed that the victim waited until three days after the

attack before she reported the crime to the police.[1]  Upon

cross-examination, she described the evolution of her

decision, over the course of three days, to report the

incident (N.T. 175-78).  She claimed that her emotional trauma

---

[1]  The legislature has specifically provided for the
introduction of such evidence.  18 Pa.C.S.A. § 3105.

caused the delay.  In order to impeach her claim of emotional

trauma, the defense attorney sought to ask the victim's fiance

whether the attack affected his ability to have sexual

relations with her the next day (N.T. 194-95).[2]

As a matter of logic, this impeachment attempt rests

upon the premise that rape victims who are emotionally upset

and fearful of reporting their attacks to the police tend to

be unable to engage in "normal" sexual activity with their

lovers on the day following their rapes.  This premise lacks

logical validity.  The human psyche remains a wonderful, but

enigmatic entity.  Classicists demonstrate the uniformity of

human behavior through the ages, and psychologists demonstrate

the variety of behavioral response, but no scholar seems

likely to prove the proposition that rape victims whose trauma

delays their reports to police tend to be unable to return

shortly to their sexual norm.  As another Pennsylvania trial

court recently stated:

> One's continuing reaction to the trauma
> of sexual assault is not readily capable of
> prediction.  Such reaction is a very personal
> thing which will vary from victim to victim.
> It is dependent upon the sensibilities and
> sensitivities of the individual involved, her
> lifestyle, how she views matters of morals,
> sex and sexual intercourse, and a multitude
> of other factors not easily capable of

---

[2] The defense had learned that they had had sexual intercourse
the evening after the attack from the hospital report.
Incidentally, this information is normally not discoverable by
means of pre-trial motions.  Commonwealth v. Dear, 342 Pa.
Super. 191, 492 A.2d 714 (1985).

> identification or evaluation.  We could
> reasonably expect the reaction of a
> prostitute or one who regularly engages
> in a smorgasbord of sexual activity on a
> recreational basis to be quite different
> from one who would find such activity
> morally offensive and shocking.  In order
> to attempt to ascribe evidentiary value
> to a victim's reaction, you should know
> the victim.

Commonwealth v. Dickerson, 2 D. & C. 4th 297, 308-09 (C.P.

Dela. 1989).

We agree with Judge Surrick, of Delaware County,

"that the fact that the victim of this sexual assault reacted

to her ordeal by seeking physical companionship and love" is

irrelevant.  Id. at 309.  Moreover, we also agree with him

that "to the extent one may think it relevant, its minimal

probative value is far outweighed by its prejudicial effect."

Id.

Furthermore, even if such evidence were admissible

as logically and legally relevant, its admission would be

contrary to Pennsylvania's Rape Shield Law, 18 Pa.C.S.A.

§ 3104.  Section 3104 refers to evidence concerning rape

victims' "past sexual conduct."  The defendant argues that

this term refers only to conduct occurring prior to a rape,

not to conduct occurring prior to the introduction of the

testimony at trial.  In other words, according to the

defendant, the statute does not preclude testimony about the

sexual conduct of rape victims during the interval between the

rape and the trial.

Like the case at bar, <u>Dickerson</u> involved an attempt by a defendant in a rape case to elicit testimony that the victim had sexual relations with her boyfriend the day after her attack. The Delaware County court held that "past sexual conduct," as used in section 3104 does include conduct occurring after the alleged rape. <u>Dickerson</u> at 304. We concur with this conclusion, and we adopt the reasoning of that court that sections 553, 551, and 552 of the Statutory Construction Act[3], read in conjunction with the dictionary-definition of "past," lead to the conclusion that "no logical reason" exists "to restrict the meaning of the word 'past' as used in section 3140 to a particular or specific time before the present." In other words "past conduct" means conduct before the present. During trial, "past conduct" means conduct occurring before each moment at the trial. It thus includes conduct prior to any moment during which a defendant seeks to introduce such testimony. Finally, we agree that to interpret the statute in the manner suggested by the defendant

> would be to defeat the obvious intent of the legislature and to create an absurd and unreasonable result. Defendant's proffered interpretation of section 3104 disregards completely the occasion and necessity for the law, the circumstances under which it was enacted, the mischief to be remedied and the object to be

---

[3] 1 App., 1 Pa.C.S.A. §§ 1501 to 1991. The section referred to in the text, formerly found in title 46, may presently be found, recodified, at <u>id.</u>, §§ 1923, 1921, and 1922, respectively.

> obtained.  Evidence of the victim's
> sexual conduct between the date of the
> attack and the trial is just as
> embarrassing, just as traumatic and just
> as abusive as evidence of sexual conduct
> prior to the attack.  And its probative
> value is just as minimal.  Defendant's
> argument is without merit.

<u>Id.</u> at 305-06.

We further note that in the case before us the defendant argues only that the Rape Shield Law does not apply; he does not argue that he satisfied its procedural requirements or either of its two exceptions.  In summary, the defendant's proffered testimony lacked logical relevance, it lacked legal relevance because of its prejudicial nature, and it was proscribed by the Rape Shield Law.

The second issue raised by the defendant concerns our factual finding that the defendant voluntarily made an inculpatory statement to his probation officer while he was incarcerated before trial.  Since we determined that this statement was made voluntarily, we allowed the prosecution to use it to impeach the defendant's credibility pursuant to Article I, Section 9 of the Constitution of Pennsylvania.

As we pointed out previously, the principal issue in this case was consent.  At trial, the prosecutrix claimed she was raped, while the defendant claimed, in essence, that he was seduced (N.T. 300-24).  Thus, the credibility of the defendant (as well as that of the prosecutrix) was at issue. Consequently, the defendant's inculpatory statement--"I guess

I did what they said I did . . . but she consented to it"--
impeached his testimony that the prosecutrix precipitated the
sexual acts.

     After the opening statements but before the
testimony commenced, we considered the defendant's motion in
limine (N.T. 13-41).  One of the issues we considered was the
admissibility of the defendant's statement to his probation
officer (N.T. 21-41).  The prosecution agreed that the _Miranda_
warnings were not given before the statement was made (N.T.
22).  However, the Commonwealth and the defendant disagreed
about whether the statement was voluntarily made (N.T. 23).
Consequently, we suggested that the probation officer be
called upon to testify about the circumstances surrounding the
defendant's statement (N.T. 25).

     The probation officer testified that she had
supervised the defendant for about fifteen months before he
made the statement (N.T. 26-27), that she is four feet eleven
and one half inches tall, weighs about 105 pounds, and that
during the approximately twenty-two meetings she had
previously held with the defendant, he had never made any
statement suggesting that he feared her (N.T. 26-27).  She
testified that he was forthright with her and that he was
"very calm" in her presence (N.T. 27).

     The defendant's probation officer then testified
about the circumstances surrounding the making of the
inculpatory statement.  She stated that she met with the

defendant in a "pretty wide" hallway in the prison, and that
no guards were standing with them (N.T. 30). Also present
were the defendant's mental health case-worker and the prison
psychologist (N.T. 31). However, these two were otherwise
engaged in conversation (N.T. 31). The probation officer
testified that she noted nothing unusual about the defendant's
appearance (N.T. 31).

The probation officer had gone to the prison to
present the defendant with a notice alleging that he violated
his parole conditions (N.T. 32). She then testified that she
said

> Craig, what happened? What happened
> and basically he just looked like he didn't
> know what he was going to say next. I said,
> Craig, what happened? He said, I don't know
> where to start and that's when I said start
> with July 23, 1990 and tell me from there
> and then that's when he went on to say, I
> guess I did what they say I did.
>
> And that just threw me off guard. I
> said, what do you mean? Then he said, I
> guess I did what they say I did. Then he
> hesitated and he said, but she consented.

(N.T. 32-33).

Later, we reconvened the evidentiary hearing on this
matter (N.T. 232-278). The probation officer gave additional
testimony. She testified that the guard was not present, that
her conversation with the defendant lasted for "probably a
minute maximum," and she did nothing to threaten the defendant
(N.T. 234), who did not appear to be under any distress (N.T.
234-35). The probation officer spoke to the defendant in a

"normal" tone of voice (N.T. 238). She stated that she "didn't know exactly what was going on" until after he made the statement (N.T. 241). Then, her tone became accusatory (id.). Still, the defendant remained calm, even though he had cried in her presence on previous occasions (N.T. 242).

The defendant's mental health case manager also testified. Addressing her relationship with the defendant, she stated: "Craig and my relationship was always rather casual. I wasn't in the role to be authoritarian. I wasn't his therapist. I wasn't in the role of judgment. I was in a role to help Craig set up appointments that he needed. It was very basic" (N.T. 266). She testified that she and the probation officer had visited several mutual clients and that the prison psychologist was walking toward them, but was not with them (N.T. 267). She also stated that the guard was some distance away, that the defendant appeared calm and that he did not appear to be distressed (N.T. 267-68). She stated that the conversation at issue was of short duration and that the defendant was not threatened in any way (N.T. 269).

After considering all of the testimony regarding these events, we made our findings of fact (N.T. 276-77). These included determinations that "[a]t the time of his responses to the inquiry, the defendant was composed, there was no appearance of any physical or mental distress. [The probation officer] had made no promises or threats to him, nor was there any other conduct of a coercive nature on the part

As we noted on the record, we have serious
apprehensions about these events (N.T. 34).  Probation
officers should refrain from questioning defendants about
pending charges.  As the defendant's cross-examination of
these witnesses show, probation officers exert supervisory
authority over their clients and they may request that
probation be revoked, thus returning clients to prison (N.T.
246-47).  Also, the three people present at the time were
authority figures (N.T. 249).  Nevertheless, in view of the
circumstances surrounding the statements, we conclude that the
defendant made his statements voluntarily.  Consequently, the
statement was admissible for purposes of impeaching the
defendant's testimony, as we instructed the jury (N.T. 367).

Finally, the defendant argues that a statement made
during testimony by the probation officer constituted evidence
of other crimes, and that we erred in refusing to grant a
mistrial.  This constitutes a two-part argument, and we
disagree with the defendant's conclusions concerning each
part.  First, we disagree that the statement complained of
constituted evidence of other criminal activity.  Earlier, the
jury had only heard the defendant's probation officer
described as a county employee.  Then, the prosecutor referred
to her as "employee of the Court" (N.T. 433).  We immediately
admonished the jury that she "is more properly referred to as
an employee of Dauphin County and no particular weight is to
be given to her testimony by reason of the reference to her as

a Court employee (N.T. 435).  Subsequently, on cross-examination, she responded "[w]ell I am familiar with the client.  I have been dealing with him for an extended amount of period [sic]" (N.T. 438).

At the threshold, we must determine whether a juror "'could reasonably infer from the facts presented that the accused had engaged in prior criminal activity.'" Commonwealth v. Shepherd, 269 Pa. Super. 291, 294, 409 A.2d 894, 895 (1979) (quoting Commonwealth v. Allen, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972).  We remain confident that our curative instruction, given before the reference at issue, would have resulted in the jury viewing the probation officer merely as a county employee.  This expunged any taint with respect to the reference to her as a court employee. Commonwealth v. Williams, 470 Pa. 172, 178, 368 A.2d 249, 252 (1977).  However, even if the jury disregarded our instruction, and did view her as a "court employee" the enigmatic statement that the probation officer had dealt with the defendant for an extended period seems unlikely to allow a reasonable juror to reasonably infer prior criminal activity. Such a juror could likely conclude that a civil matter, such as child support, was involved.

Second, even if a juror did infer that the defendant had engaged in prior criminal activity, a new trial is not warranted.  As Chief Justice Nix has stated, even when trial courts exercise every possible caution, evidence of prior

criminal activity may impregnate a trial. Commonwealth v. Gaerttner, 335 Pa. Super. 203, 229, 484 A.2d 92, 106 (1984) (quoting Commonwealth v. Williams, 470 Pa. at 178, 368 A.2d at 252 (Nix, C.J.)).

Here, a new trial is not warranted. Importantly, the defense counsel elicited the remark. Cf. Gaerttner at 229, 484 A.2d at 106. Second, the remark did not clearly demonstrate prior criminal activity. Cf. id. at 228-29, 484 A.2d at 106. Third, we gave a currative instruction breaking the logical chain before the contested remark was made, a factor of "great import." Id. In view of these factors, the defendant was not denied a fair trial. Id.

For the foregoing reasons we entered the following

### ORDER

AND NOW, March 25, 1991, the defendant's post verdict motions are denied and the District Attorney is directed to present him for sentencing.

*Warren G Morgan*
_____
Warren G. Morgan, P.J.

OPINION DATED: *June 20, 1991*

Distribution:

Todd B. Narvol, Chief Deputy District Attorney
Thomas A. Thornton, Chief Deputy Public Defender
Institution
Defendant

**APPENDIX "C"**

Received in Superior Court

DEC 1 6 1998

HARRISBURG

IN THE SUPERIOR COURT
OF PENNSYLVANIA

No.  1352 Harrisburg 1998

COMMONWEALTH OF PENNSYLVANIA,

Appellee

vs.

CRAIG ALAN WEST,
Appellant

RECEIVED

NOV 6 1998

DISTRICT ATTORNEY'S
OFFICE
DAUPHIN COUNTY

BRIEF FOR APPELLANT

Appeal from the Memorandum Opinion
of the Honorable Richard A. Lewis
Court of Common Pleas, Dauphin County,
Dated 8/7/98, Docketed at 2283 C.D. 1990

FRANCIS M. SOCHA, ESQ.
I.D.# 29101
2201 North Second Street
Harrisburg, PA  17110
(717) 233-4141

Attorney for Appellant

# TABLE OF CONTENTS

TABLE OF CITATIONS.................................... i

I.   STATEMENT OF JURISDICTION........................... 4

II.  ORDER IN QUESTION................................... 5

III. STATEMENT OF THE CASE............................... 6

IV.  ISSUES INVOLVED..................................... 11

V.   SUMMARY OF ARGUMENT................................. 12

VI   ARGUMENT............................................ 14

VII. CONCLUSION.......................................... 22

<u>TABLE OF CITATIONS</u>

<u>Case</u>                                                     <u>Page</u>

<u>Commonwealth v. Buehl</u>
540 Pa. 493, 658 A.2d 771 (1995)..................... 17

<u>Commonwealth v. Collins</u>
546 Pa. 616, 687 A.2d 1112 (1996)..................... 17

<u>Commonwealth v. Durst</u>
522 Pa. 21, 559 A.2d 504 (1989)..................... 17

<u>Commonwealth v. Hosey</u>
364 Pa.Super. 578, 528 A.2d 659 (1987)............... 18

<u>Commonwealth v. Jones</u>
449 Pa.Super. 58, 672 A.2d 1353 (1996)............... 18

<u>Commonwealth v. Prosdocimo</u>
525 Pa. 150, 578 A.2d 1273 (1990)..................... 18

<u>Commonwealth v. Robinson</u>
452 Pa.Super. 606, 682 A.2d 831 (1996)............... 14

<u>Commonwealth v. Snoke</u>
525 Pa. 295, 580 A.2d 295 (1990)..................... 18

<u>Commonwealth v. Spotts</u>
341 Pa.Super. 31, 491 A.2d 132 (1985)............... 20,21

<u>Commonwealth v. Tilley</u>
528 Pa. 125, 595 A.2d 575 (1991)..................... 19

<u>Commonwealth v. Wallace</u>
433 Pa.Super. 518, 641 A.2d 321 (1994)............... 17

<u>Commonwealth v. West</u>
___ Pa. ___, 605 A.2d 333 (1992)..................... 8

<u>Commonwealth v. White</u>
449 Pa.Super. 386, 674 A.2d 253 (1996)............... 20,21

## I.  STATEMENT OF JURISDICTION

Jurisdiction is conferred upon this Court by the Act of
1976, July 9, P.L. 586, No. 142 section 2, 42 Pa.C.S. §742,
providing that the Superior Court shall have exclusive appellate
jurisdiction of all appeals from final orders of the Courts of
Common Pleas, regardless of the nature of the controversy or the
amount involved, except such classes of appeals as are by any
provision of this chapter within the exclusive jurisdiction of
the Supreme Court or the Commonwealth Court.

II.  <u>ORDER IN QUESTION</u>

    This appeal is taken from the Memorandum Opinion of the Honorable Richard A. Lewis from the Court of Common Pleas, Dauphin County, Pennsylvania, dated August 7, 1998, to wit

    "AND NOW, this <u>7th</u> day of August, 1998, upon consideration of Petitioner West's request for post-conviction relief, IT IS HEREBY ORDERED that his PCRA petition is dismissed as untimely."

## III. <u>STATEMENT OF THE CASE</u>

On December 5, 1990, the Appellant was tried in front of a Dauphin County jury, with the Honorable Warren G. Morgan presiding, on the charges of kidnapping, rape and involuntary deviate sexual intercourse docketed to 2283 C.D. 1990. On December 7, 1990, the Appellant was found guilty of counts two (2), rape, and three (3), involuntary deviate sexual intercourse, and not guilty of count one (1), kidnapping, on the charges docketed to 2283 C.D. 1990. On April 22, 1991, the Appellant was sentenced by the Honorable Warren G. Morgan to a term of imprisonment of five (5) ten (10) years on count two (2), rape; and a consecutive sentence of five (5) to ten (10) years on count three (3), involuntary deviate sexual intercourse, on the charges docketed to 2283 C.D. 1990. The charges stem out of a kidnapping and rape of one Linda Smith while she was leaving Sera-Tec, a blood/plasma-donation center, in Harrisburg, Pennsylvania, on July 23, 1990.

At trial, the Commonwealth called Linda Smith (hereinafter "victim") who testified that on July 23, 1990, she was giving blood at the Sera-Tec plasma center when she noticed the Appellant staring at her. (N.T. 42-50). The victim testified that she was done giving blood around 7:10 p.m. and while she was walking to her car she was accosted from behind by the Appellant. (N.T. 50-56). The victim testified that the Appellant started choking her and ordered her into her car on the passenger seat.

6

(N.T. 62).  The victim testified that the Appellant told her to take her clothes off and start to play with herself.  (N.T. 66).  The victim testified that the Appellant eventually pulled off into the woods and forced her to perform oral sex on himself.  (N.T. 76).  The victim further testified that the Appellant forced oral sex, vaginal and anal sex upon her person.  (N.T. 76-79).  Thereafter, the victim testified that the Appellant drove her back to somewhere in Harrisburg and left her and she returned to her boyfriend's house.  (N.T. 91-93).  The victim testified that she reported the incident to the police on Thursday[1], three (3) days after the rape[2].  (N.T. 101-103).

Stanley Stambaugh, the victim's boyfriend, testified that he saw the victim on July 23, 1990 and noticed that she was crying a lot.  (N.T. 182-184).  Mr. Stambaugh testified that the victim informed him that she was grabbed by a stranger who took her to the woods and sexually assaulted and raped her.  (N.T. 182-187).

Gloria Davis, the victim's boss, testified that during the week of July 23, 1990, she noticed that the victim was acting very upset at work.  (N.T. 207).  Ms. Davis testified that she took the victim to a nearby rape-crisis center.  (N.T. 210).

Delores Steele testified on behalf of the Commonwealth and indicated that she worked for Sera-Tec on July 23, 1990.

---

[1]  July 26, 1990.

[2]  Appellant notes that the victim testified the rape occurred on July 23, 1990, a Monday.  (N.T. 45-50).

Specifically, Ms. Steele testified that the victim left the establishment at 7:15 p.m. and the Defendant left at 6:50.  (N.T. 216).

The Appellant testified that he was at Sera-Tec while the victim was giving blood on July 23, 1990.  (N.T. 302).  The Appellant testified that while he was in the parking lot getting ready to leave the victim approached him to help start her car. (N.T. 305).  The Appellant testified that the victim came onto him and asked if he wanted to go for a "ride" since they could not go back to her house.  (N.T. 309).  The Appellant testified that he eventually performed oral and vaginal sex upon the victim and the victim willingly participated.  (N.T. 316-324).  The Appellant further testified that his left hand had been previously shatter and the first three (3) fingers do not move. (N.T. 332).

Thereafter, a Notice of Appeal was filed and on May 14, 1991, the Superior Court affirmed the Appellant's conviction. (296 Hbg. 1991).  On April 13, 1992, the Pennsylvania Supreme Court denied the Appellant's petition for allowance of appeal. Commonwealth v. West, ___ Pa. ___, 605 A.2d 333 (1992).  No further appeals of the Appellant's conviction were undertaken in federal court.

On May 20, 1998, the Appellant filed a pro-se Post Conviction Relief Act (PCRA) petition and on May 21, 1998, the Honorable Richard A. Lewis appointed present counsel to represent

8

the Appellant.  On July 1, 1998, the Appellant's present counsel filed a supplemental PCRA petition whereby the Appellant contended that trial counsel was ineffective for failing to request a prompt complaint charge and/or failing to object to the trial court's jury instruction.  Specifically, the Appellant contended that the lack of such an instruction prejudiced the truth determining process of the Appellant's conviction to such an extent that no reliable determination of guilt or innocence could have taken place since the jury could not accurately balance the victim's testimony with the Appellant's consent testimony regarding their sexual relations.  (See paragraph 8 of the Appellant's supplemental PCRA petition).

Furthermore, Appellant also averred that his pro-se PCRA petition was timely filed under two (2) exceptions to the one (1) year time requirement for the filing of a pro-se PCRA petition.  See 42 Pa.C.S.A. §9545(b)(1)(i),(ii).  Specifically, the Appellant claimed that an exception should be granted since the facts upon which his claim was based were unknown to the Appellant and could not have been ascertained with the exercise of due diligence due to the Appellant's limited knowledge of the law.  See 42 Pa.C.S.A. §9545(b)(1)(i).

Appellant also contended that a second exception should be granted since all of his trial transcripts and court documents which give rise to the present facts were destroyed while he was in the care of government officials while at the Camp Hill State

9

Prison.  See 42 Pa.C.S. §9545(b)(1)(ii).  Appellant further
contended that he filed his pro-se PCRA petition within sixty
(60) days from the date he learned that the above facts entitled
him to relief under the PCRA.  See 42 Pa.C.S.A. §9545(b)(2).

On August 7, 1998, the Honorable Richard A. Lewis dismissed
the Appellant's petition as being untimely filed without the
benefit of an evidentiary hearing.  Appellant notes that Judge
Lewis did <u>not</u> address in his opinion the merits of the
Appellant's claim of trial counsel ineffectiveness raised in the
Appellant's supplemental PCRA petition.

On August 21, 1998, a Notice of Appeal was filed and on
November 6, 1998 this Honorable Court ordered a brief be filed in
support of the Appellant's appeal on or before December 16, 1998.

IV.   <u>ISSUES INVOLVED</u>:

    1.   <u>DID THE APPELLANT FILE A TIMELY PRO-SE</u>
        <u>POST CONVICTION RELIEF ACT (PCRA) PETITION</u>
        <u>UNDER 42 PA.C.S.A. §9545(b)</u>?

        Answered in the negative by the trial court.

    2.   <u>WAS TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT</u>
        <u>THE TRIAL COURT'S INSTRUCTIONS TO THE JURY AND/OR</u>
        <u>REQUESTING PA.STD.CRIM.J.INST. §4.13(a) SINCE THE</u>
        <u>JURY WAS NOT PROPERLY INSTRUCTED AS TO THE VICTIMS'</u>
        <u>FAILURE TO FILE A PROMPT COMPLAINT</u>?

        Not addressed by the trial court.

    3.   <u>DID THE TRIAL COURT ERR AS A MATTER OF LAW BY FAILING</u>
        <u>TO HOLD AN EVIDENTIARY HEARING REGARDING THE</u>
        <u>FACTUAL ALLEGATIONS THAT THE APPELLANT FILED A TIMELY</u>
        <u>PRO-SE PCRA PETITION</u>?

        Not addressed by the trial court.

## V.   SUMMARY OF ARGUMENT

Appellant contends that he filed a timely pro-se PCRA petition.  Specifically, Appellant contends that his pro-se PCRA petition was timely filed under two (2) exceptions to the one (1) year filing requirement since interference from governmental officials precluded him from filing a prompt petition and that the facts upon which his claim is predicated were unknown to him. Appellant also contends that he filed his pro-se PCRA petition within sixty (60) days from the date he learned of the above facts which would entitle him to relief under the PCRA.

Appellant contends that trial counsel was ineffective for failing to request Pa.Std.Crim.J.Inst. §4.13(a), failure to make prompt complaint, and/or failing to object to the trial court's jury instructions.  At trial, the victim testified that she did not report the sexual crimes committed against her until three (3) days after the incident.  (N.T. 101-103).  Appellant contends that trial counsel's failure to request said instruction or object to the trial court's instruction prejudiced the truth determining process to such an extent that no reliable determination of guilt or innocence could have taken place since the jury could not accurately balance the victim's testimony with the Appellant's consent testimony regarding their sexual relationship.  Appellant further contends that but/for trial counsel's ineffectiveness the outcome of his trial would have

been different since the jury would have been properly instructed and would have found the Appellant not guilty.

Appellant contends that the trial court erred as a matter of law by summarily dismissing the Appellant's request for relief under the PCRA as being untimely without conducting an evidentiary hearing. Specifically, Appellant contends that the trial court was compelled to hold an evidentiary hearing to allow the Appellant to develop on the record the factual allegations surrounding the two (2) exceptions to the one (1) year filing requirement raised by the Appellant.

VI.   <u>ARGUMENT</u>

1.   <u>THE APPELLANT FILED A TIMELY PRO-SE POST CONVICTION RELIEF ACT (PCRA) PETITION UNDER 42 PA.C.S.A. §9545(b)</u>?

In reviewing a dismissal of a PCRA petition, an appellate court's scope of review is limited to determining whether the PCRA court's findings were supported by the record and its order is otherwise free from legal error.  <u>Commonwealth v. Robinson</u>, 452 Pa.Super. 606, 682 A.2d 831, 833 (1996).  Furthermore, an appellate court will not disturb findings of the PCRA court unless they have no support in the record.  <u>Id.</u>

Appellant contends that the trial court's ruling that his pro-se PCRA petition was untimely filed was improper and not supported by the record.  Specifically, in paragraph eleven (11) of the Appellant's supplemental PCRA petition he averred that:

> "11. Petitioner contends the present pro-se PCRA petition was  timely filed since the failure to raise this claim promptly was the result of interference by government officials and the facts upon which his pro-se PCRA petition is predicated on were unknown to the Petitioner and could not have been  ascertained by the exercise of due diligence. 42 Pa.C.S.A.   §9545(b)(1)(i)&(ii).  Specifically, Petitioner contends that an exception to the one (1) year filing requirement should be  granted since the facts upon which this claim is predicated were unknown to the Petitioner and could not have been ascertained with the exercise of due diligence due to the Petitioner's limited knowledge of the law.  42 Pa.C.S.A. §9545(b)(1)(ii).  Only after the filing of his pro-se PCRA petition and the review of the trial transcript by present counsel did the instant issue become apparent.  Petitioner further contends that an exception should be granted since his trial transcripts and all court documents which gave rise to the present facts were destroyed while he was in the care of government officials while at the Camp Hill State Prison.  42 Pa.C.S.A. §9545(b)(1)(i).  Petitioner further contends that he filed his pro-se PCRA petition within sixty (60) days from the

14

date he learned that the above facts entitled him to relief
under the PCRA.   42 Pa.C.S.A. §9545 (b)(2)."

42 Pa.C.S.A. §9545(b) states in pertinent part that:

(b)   Time for filing petition -

(1)   Any petition under this subchapter, including a
second or subsequent petition, shall be filed within
one year of the date the judgment becomes final,
unless the petition alleges and the petitioner proves
that:

(i)   the failure to raise the claim previously
was the result of interference by government
officials with presentation of the claim in
violation of the Constitution or laws of this
Commonwealth or the Constitution or laws of the
United States;

(ii)   the facts upon which the claim is predicated
were unknown to the petitioner and could not have
been ascertained by the exercise of due
diligence...

(2)   Any petition invoking this exception provided in
paragraph (1) shall be filed within sixty (60) days
from the date the claim could have been presented.

Appellant contends that his pro-se PCRA petition was timely

filed since the failure to raise his claim promptly was the

result of interference by government officials <u>and</u> the facts upon

which his pro-se PCRA petition is predicated were unknown to the

Petitioner and could not have been ascertained by the exercise of

due diligence[3].   42 Pa.C.S.A. §9545(b)(1)(i)&(ii).

---

[3]   Appellant notes that <u>Commonwealth v. Alcorn</u>, ___ Pa.Super.
___, 703 A.2d 1054 (1997) is factually dissimilar to the present
case and does not apply.  In <u>Alcorn</u>, the Defendant failed to allege
that a statutory exception entitled him to relief whereas in the
present case the Appellant has averred that two (2) exceptions
entitle him to relief in light of the one (1) year filing
requirement under the PCRA.

15

Specifically, Appellant contends that an exception to the one (1) year filing requirement should be granted under 42 Pa.C.S.A. §9545(b)(1)(ii) since the facts upon which his claim is predicated were unknown to the Appellant and could not have been ascertained with the exercise of due diligence due to the Appellant's limited knowledge of the law. Only after the filing of the pro-se PCRA petition and the review of the trial transcript by present counsel did the instant issue become apparent.

Appellant also contends that an exception to the one (1) year filing requirement should be granted under 42 Pa.C.S.A. §9545(b)(1)(i) since his trial transcripts and all court documents which gave rise to the present facts were destroyed while he was in the care of government officials while at the Camp Hill State Prison. Appellant contends that he can not be held responsible for the acts, or failure to act, of government officials who allowed the Appellant's trial transcripts to be destroyed in a fire. Appellant further contends that he filed his pro-se PCRA petition within sixty (60) days from the date he learned that the above facts entitled him to relief under the PCRA. See 42 Pa.C.S.A. §9545 (b)(2).

Thus, Appellant contends that the trial court incorrectly denied his petition for relief under the PCRA as being untimely since he pled and proved that he was entitled to two (2) statutory exceptions for the one (1) year filing requirement.

16

2.    WAS TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT
THE TRIAL COURT'S INSTRUCTIONS TO THE JURY AND/OR
REQUESTING PA.STD.CRIM.J.INST. §4.13(a) SINCE THE
JURY WAS NOT PROPERLY INSTRUCTED AS TO THE VICTIMS'
FAILURE TO FILE A PROMPT COMPLAINT?

In the context of a PCRA, to establish ineffective

assistance of counsel, an appellant must prove the following:

(1) the underlying issue has arguable merit; (2) counsel
had no reasonable basis for the decision, Commonwealth v.
Durst, 522 Pa. 21, 559 A.2d 504 (1989); and (3) counsel's
error prejudiced appellant and so undermined the truth
determining process that no reliable adjudication of guilt
or innocence could have taken place.  Commonwealth v. Buehl,
540 Pa. 493, 658 A.2d 771 (1995).

Commonwealth v. Collins, 546 Pa. 616, 687 A.2d 1112, 1113 (1996).

Trial counsel is presumed to be effective, and the burden[4] of

proving ineffectiveness rests with appellant.  Commonwealth v.

Wallace, 433 Pa.Super. 518, 641 A.2d 321 (1994).

The Pennsylvania Superior Court has held that a trial

court's instructions must be read as a whole and error cannot be

predicated on isolated excerpts from the charge.  Commonwealth v.

Hosey, 364 Pa.Super. 578, 528 A.2d 659 (1987).  Furthermore, the

trial court has broad discretion in "phrasing its instructions,

and may choose its own wording so long as the law is clearly,

adequately, and accurately presented to the jury for it's

consideration."  Commonwealth v. Prosdocimo, 525 Pa. 150, 578

A.2d 1273, 1274 (1990).  Where actual occurrence of sexual

assault is at issue the trial judge is required to charge the

_____

[4]   Appellant notes that said burden is by a preponderance of
the evidence.  42 Pa.C.S.A. §9543(a) (Supp. 1997).

17

jury as to the relevancy of the delay in disclosure and significance of a prompt complaint. <u>Commonwealth v. Snoke</u>, 525 Pa. 295, 580 A.2d 295 (1990). (emphasis added). Furthermore, in <u>Commonwealth v. Jones</u>, 449 Pa.Super. 58, 672 A.2d 1353 (1996), the Pennsylvania Superior Court held that although a trial court is not required to instruct the jury on the issue of lack of prompt complaint verbatim from the Pennsylvania Standard Jury Instructions, <u>the jury must be instructed on a victim's delay in failing to file a prompt complaint</u> in order for the jury to properly evaluate the victim's testimony in deciding whether the act occurred with or without  consent. <u>Id.</u> at 1358 (emphasis added). See also, 18 Pa.C.S.A. §3105.

Appellant contends that under <u>Snoke</u> and <u>Jones</u>, trial counsel was ineffective for failing to request Pa.Std.Crim.J.Inst. §4.13(a)[5], failure to make prompt complaint, and/or failing to object to the trial court's jury instructions.  At trial, the victim testified that she did not report the sexual crimes committed against her until three (3) days after the incident. (N.T. 101, 206-207).  The Appellant testified that the sexual relations which occurred between the victim and himself were consensual.  (N.T. 316-322, 332-333).  Thus, since witness credibility was of paramount importance, the Appellant was

---

[5]  Appellant notes that while the Pennsylvania Supreme Court has not adopted the Pennsylvania Standard Criminal Jury Instructions as law, they are often used by judges and lawyers to prepare a proper charge. <u>Commonwealth v. Tilley</u>, 528 Pa. 125, 595 A.2d 575 (1991).

18

prejudiced by the trial court's failure to instruct the jury about the victim's delay in reporting the incident.   (N.T. 450-461).

Appellant contends that under Snoke and Jones, trial counsel could have had no reasonable basis for failing to request Pa.Std.Crim.J.Inst. §4.13(a) and/or objecting to the trial court's lack of an instruction regarding the victim's failure to file a prompt complaint.  Appellant contends that trial counsel's ineffectiveness prejudiced the truth determining process of the Petitioner's guilt to such an extent that no reliable determination of guilt or innocence could have taken place. Specifically, Appellant contends that without an instruction regarding the victim's failure to file a prompt complaint the jury was unable to accurately balance the victim's testimony against the Appellant's testimony regarding their sexual relations, especially in light of the Appellant's consent defense.

Under Jones and Snoke the result of the Appellant's trial would have been different "but/for" trial counsel's ineffectiveness since the jury would have been properly instructed concerning the victim's failure to file a prompt complaint.  Appellant contends that he is innocent on the charges of rape or involuntary deviate sexual intercourse, as noted in his consent testimony at trial and there is a reasonable

probability that the result of the proceeding would have been different if the jury was properly instructed.

    3.   <u>THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO HOLD AN EVIDENTIARY HEARING REGARDING THE FACTUAL ALLEGATIONS THAT THE APPELLANT FILED A TIMELY PRO-SE PCRA PETITION.</u>

In <u>Commonwealth v. White</u>, 449 Pa.Super. 386, 674 A.2d 253 (1996), the Pennsylvania Superior Court held that while the right to an evidentiary hearing is not absolute "...a [evidentiary] hearing may only be denied if a petitioner's claim is patently frivolous and without trace of support either in the record or from other evidence." <u>Id.</u> at 256.  In <u>Commonwealth v. Spotts</u>, 341 Pa.Super. 31, 491 A.2d 132 (1985) the Pennsylvania Superior Court also held that "[w]hen an arguable claim of ineffective assistance of counsel has been made, and there has been no evidentiary hearing in the court below to permit the defendant to develop evidence on the record to support the claim and to provide the Commonwealth an opportunity to rebut the claim, this Court will remand for such a hearing." <u>Id.</u> at 134. Furthermore, under Pa.R.Crim.P. 1508 the trial court is required to conduct an evidentiary hearing if the petition raises material issues of fact.

Appellant contends that the facts underlying the delay in the filing of his pro-se PCRA petition within the one (1) year filing requirement were material and were not patently frivolous. Appellant further contends that the trial court erred in dismissing the Appellant's claims for relief under the PCRA

20

without the benefit of an evidentiary hearing since the Appellant
was precluded from developing evidence on the record to support
his timeliness claim.  Thus, under Pa.R.Crim.P. 1508, <u>Spotts</u> and
<u>White</u>, the trial court erred as a matter of law in denying the
Appellant's claim for relief as untimely without conducting an
evidentiary hearing.

## VI.  CONCLUSION:

WHEREFORE, the Appellant requests that a new trial be granted in light of the prejudicial nature of trial counsel's ineffectiveness.  In the alternative, the Appellant requests that an evidentiary hearing on the allegations contained herein be ordered.

Respectfully submitted,

By: _____

Francis M. Socha, Esquire
I.D. # 29101
2201 North Second Street
Harrisburg, PA 17110
(717) 233-4141
Attorney for Petitioner

Date: 12-16-98

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE COURT OF COMMON PLEAS |
| | : DAUPHIN COUNTY, PENNSYLVANIA |
| | : |
| VS. | : CHARGES: KIDNAPPING, RAPE, |
| | : INVOLUNTARY DEVIATE SEXUAL |
| | : INTERCOURSE |
| | : ᗱᗱᙠᙠ |
| CRAIG ALAN WEST | : NO. ᗱᗱ CD 1990 |

## MEMORANDUM OPINION

On December 7, 1990, a jury found Petitioner Craig Alan West guilty of rape and involuntary deviate sexual intercourse but not guilty of kidnapping. He was subsequently sentenced by the Honorable Warren G. Morgan of this court on April 22, 1991 to imprisonment in a state correctional institution for a term of five (5) to ten (10) years on the rape charge and a consecutive term of imprisonment of five (5) to ten (10) years on the involuntary deviate sexual intercourse charge. Petitioner appealed and on May 14, 1991, the Superior Court affirmed his conviction and sentence.

Presently, petitioner is before this court requesting post-conviction relief pursuant to the Post-Conviction Collateral Relief Act (PCRA), 42 Pa.C.S.A. §9541 et seq. Petitioner filed a *pro se* petition and on May 21, 1998 counsel was appointed to represent him. Appointed counsel filed a supplemental petition on July 1, 1998 maintaining that trial counsel was ineffective for failing to request a prompt complaint jury instruction. Counsel also contends that an exception to the one year filing requirement in the PCRA statute should be granted since the facts upon which petitioner's claim is predicated were unknown to him and could not be ascertained with the exercise of due diligence because of petitioner's limited knowledge of the

RECEIV

AUG 0 7

law.  42 Pa.C.S.A. §9545(b)(1)(ii).  Counsel further contends that an exception should be granted

since his trial transcripts and all court documents which give rise to petitioner's current

arguments were destroyed while he was in the care of government officials while at the Camp

Hill State Prison.  42 Pa.C.S.A. §9545(b)(1)(i).  Finally, because petitioner filed his pro-se

PCRA petition within sixty (60) days from the date he learned of the above facts, he claims he is

entitled to relief.  42 Pa.C.S.A.  §9545(b)(2).

On January 16, 1996, revisions regarding the time provisions for filing a PCRA

went into effect.  The amendments read, in part:

(b) Time for filing petition.-

1)  Any petition under this subchapter, including a second
or subsequent petition, shall be filed within one year of
the date the judgment becomes final, unless the petitioner
alleges and the petitioner proves that:
 (i) the failure to raise the claim previously was the
  result of interference by government officials with
  the presentation of the claim in violation of the
  Constitution or laws of this Commonwealth or the
  Constitution or laws of the United States;
 (ii) the facts upon which the claim is predicated
  were unknown to the petitioner and could not
  have been ascertained by the exercise of due
  diligence; or
 (iii) the right asserted is a constitutional right that
  was recognized by the Supreme Court of the
  United States or the Supreme Court of Pennsylvania
  after the time period provided in this section and has
  been held by that court to apply retroactively.
2)  Any petition invoking an exception provided in paragraph (1)
shall be filed within 60 days of the date the claim could have
been presented.
3)  For purposes of this subchapter, a judgment becomes final
at the conclusion of direct review, including discretionary
review in the Supreme Court of the United States and the

Supreme Court of Pennsylvania, or at the expiration of time
for seeking the review.

42 Pa.C.S.A. §9545(b)(1), (2), (3). Therefore, this section provides that for a petition to be

timely, it must be filed within one year of the date that the judgment becomes final. In this case,

petitioner's judgment became final on April 13, 1992 when allocatur was denied by the

Pennsylvania Supreme Court. Because petitioner's PCRA petition was filed in an untimely

manner, it is dismissed.

This court finds petitioner's arguments that an exception to the timeliness rule

should be applied due to government interference and due to facts unascertainable by petitioner

are meritless. Clearly, enough information was available to petitioner regardless of alleged

destroyed documents and unknown facts to permit petitioner to file a pro se petition with this

court prior to May, 1998. The exceptions under 42 Pa.C.S.A. §9545 do not apply to Petitioner

West. No purpose could be served with further proceedings.

Accordingly, the following is entered:

3

COMMONWEALTH OF PENNSYLVANIA    : IN THE COURT OF COMMON PLEAS
   : DAUPHIN COUNTY, PENNSYLVANIA
   :
           VS.    : CHARGES: KIDNAPPING, RAPE,
   : INVOLUNTARY DEVIATE SEXUAL
   : INTERCOURSE
   : *2283*
CRAIG ALAN WEST    : NO. ~~22~~ CD 1990

## ORDER

AND NOW, this 7th day of August, 1998, upon consideration of Petitioner

West's request for post-conviction relief, IT IS HEREBY ORDERED that his PCRA petition is

dismissed as untimely.

_____
Richard A. Lewis, Judge

Distribution: 8-10-98
Jeffrey B. Engle, Esq., Deputy District Attorney
✓ Francis M. Socha, Esq., 2201 N. Second St., Hbg., PA 17110
Dianne Marks, District Attorney's Office

APPENDIX "D"

RECEIVED

JUL 29 1999

DISTRICT ATTORNEY'S
OFFICE
DAUPHIN COUNTY

J. S52027/99

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
     Appellee   :        PENNSYLVANIA

     v.   :

CRAIG ALAN WEST,   :   No. 1352 Harrisburg 1998
     Appellant   :

Appeal from the Order denying Post Conviction Relief entered
August 7, 1998, Court of Common Pleas,
Dauphin County, Criminal Division
at No. 2283 CD 1990.

*J U D G M E N T*

*ON CONSIDERATION WHEREOF*, it is now here ordered and
adjudged by this Court that the judgment of the Court of
Common Pleas of    DAUPHIN      County be, and the same
is hereby   AFFIRMED.



*BY THE COURT:*

PROTHONOTARY

*Dated:*   July 28, 1999

J. S52027/99

COMMONWEALTH OF PENNSYLVANIA,  :  IN THE SUPERIOR COURT OF
         Appellee               :            PENNSYLVANIA
                          :
         v.              :
                          :
CRAIG ALAN WEST,          :     No. 1352 Harrisburg  1998
         Appellant         :

Appeal from the Order denying Post Conviction Relief entered
August 7, 1998, Court of Common Pleas,
Dauphin County, Criminal Division
at No. 2283 CD 1990.

BEFORE:  JOHNSON, EAKIN, and HESTER, JJ.

MEMORANDUM:                    **F I L E D** JUL 2 8 1999

    In December 1990, a jury convicted Craig Alan West of rape and involuntary deviate sexual intercourse. The Honorable Warren G. Morgan sentenced West to an aggregate term of ten to twenty years' imprisonment. West appealed the judgment of sentence and we affirmed. *Commonwealth v. West*, 606 A.2d 1234 (Pa. Super. 1991) (unpublished memorandum). Our Supreme Court denied West's petition for allowance of appeal. *Commonwealth v. West*, __ Pa. __, 605 A.2d 333 (1992). West did not file a writ of certiorari to the United States Supreme Court.

    On May 20, 1998, West filed a *pro se* petition for relief under the Post Conviction Relief Act (PCRA). Counsel was appointed and an amended petition was filed. In that amended petition, West alleged that his trial

J. S52027/99

counsel was ineffective for failing to request a prompt complaint charge and/or for failing to object to the trial court's jury instruction. West averred that his PCRA petition was timely filed under two exceptions to the one-year time requirement for filing of a PCRA petition found in 42 Pa.C.S. § 9545(b)(1). Firstly, West claimed that, pursuant to Section 9545(b)(1)(ii), an exception should be granted since the facts upon which his claim was based were unknown to West and could not have been ascertained with the exercise of due diligence due to West's limited knowledge of the law. Secondly, West claimed that, pursuant to Section 9545(b)(1)(i), he is entitled to the benefit of an exception since all of his trial transcripts and court documents giving rise to the present facts were destroyed while he was in the care of government officials while at the State Correctional Institution at Camp Hill.

Following review of the amended PCRA petition, the Honorable Richard A. Lewis dismissed the petition without a hearing. West now appeals from that dismissal and we affirm. On appeal, West presents three questions for our review:

1. DID THE APPELLANT FILE A TIMELY PRO-SE POST CONVICTION RELIEF ACT (PCRA) PETITION UNDER 42 PA.C.S.A. § 9545(b)?

2. WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO OBJECT TO THE TRIAL COURT'S INSTRUCTIONS TO THE JURY AND/OR REQUESTING PA.STD.CRIM.J.INST. § 4.13(a) SINCE THE JURY WAS

J. S52027/99

NOT PROPERLY INSTRUCTED AS TO THE VICTIMS' FAILURE TO FILE
A PROMPT COMPLAINT?

3. DID THE TRIAL COURT ERR AS A MATTER OF LAW BY FAILING
TO HOLD AN EVIDENTIARY HEARING REGARDING THE FACTUAL
ALLEGATIONS THAT THE APPELLANT FILED A TIMELY PRO-SE PCRA
PETITION?

Brief for Appellant at 11.

The Post Conviction Relief Act was amended on November 17, 1995,

with the amendments becoming effective within sixty days. These

amendments restrict the time in which a PCRA petition may be filed. The

relevant portion of the PCRA now provides:

**(b) Time for filing petition.—**

(1) Any petition under this subchapter, including a second
or subsequent petition, shall be filed within one year of the date
the judgment becomes final, unless the petition alleges and the
petitioner proves that:

(i) the failure to raise the claim previously was the
result of interference by government officials with the
presentation of the claim in violation of the Constitution
or laws of this Commonwealth or the Constitution or laws
of the United States;

(ii) the facts upon which the claim is predicated
were unknown to the petitioner and could not have been
ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that
was recognized by the Supreme Court of the United
States or the Supreme Court of Pennsylvania after the
time period provided in this section and has been held by
that court to apply retroactively.

J. S52027/99

* * * *

(3) For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

42 Pa.C.S. § 9545(b). This amendment also provides that where the petitioner's judgment of sentence became final before the effective date of the amendments, a PCRA petition shall be timely filed if it is the petitioner's *first* PCRA petition and was filed within one year of the effective date of the amendments, January 16, 1996. **See *id*.** note (1995 Legislation).

This is West's first petition for post conviction relief, and so it will be considered timely filed if filed within one year of the effective date of the amendments. Because his petition was filed on May 20, 1998, well beyond the one-year period following the effective date of the amendments, West must rely upon one or more of the exceptions found in Section 9545(b)(1) in order for us to reach the merits of his appeal.

West correctly sets forth the standard of review by which we must determine this appeal. In reviewing an order either granting or denying post-conviction relief, our standard of review is limited to examining whether the trial court's determination is supported by evidence of record and whether it is free from error. ***Commonwealth v. Albrecht***, 554 Pa. 31, _ n.3, 720 A.2d 693, 698 n.3 (1998). The findings of the PCRA court will

J. S52027/99

not be disturbed unless they lack support from the record. ***Commonwealth***

***v. Rounsley***, 717 A.2d 537, 538 (Pa. Super. 1998).

Here, Judge Lewis dismissed West's PCRA petition on the following

basis:

> This court finds petitioner's arguments that an exception to the timeliness rule should be applied due to governmental interference and due to facts unascertainable by petitioner are meritless. Clearly, enough information was available to petitioner regardless of alleged destroyed documents and unknown facts to permit petitioner to file a pro se petition with this court prior to May, 1998. The exceptions under 42 Pa.C.S.A. § 9545 do not apply to Petitioner West. No purpose could be served with further proceedings.

Trial Court Opinion, 8/7/98, at 3. We now turn to examine the correctness

of the trial court's findings and conclusions.

At paragraph 11 in his Supplemental PCRA petition filed July 1, 1998,

West alleges that the facts upon which his PCRA claim are predicated were

unknown to him and could not have been ascertained with the exercise of

due diligence due to his limited knowledge of the law. However, nowhere in

his Supplemental Petition does he specify those "facts" that are alleged to

have been previously unknown to him. Our review of West's *pro se* PCRA

petition filed May 20, 1998 contains numerous facts, all of which would have

been known to him continuously since the time of trial. West alleges that

trial counsel did not: (1) investigate and prepare for West's defense; (2)

move for a mistrial when a second suppression hearing was held halfway

-5-

J. S52027/99

through the trial; (3) move for a mistrial when the prosecutor stated in front of the jury that "defendant was under investigation for another crime"; (4) object to the prosecutor's closing statement questioning why: "a woman with everything [would] want to be with a man like [you] with nothing"; (5) object to the trial judge's bias for not declaring a mistrial when judge stated to the jury that West was guilty; (6) appeal the judgment of sentence; and (7) move for recusal of the trial judge.  In his *pro se* petition, West also claimed that the trial court erred in: (1) not allowing counsel to impeach the testimony of a Commonwealth witness, and (2) not allowing the verdict to stand when West was found not guilty of kidnapping.  All of these factual allegations are contained in the *pro se* petition filed May 20, 1998.

The first five paragraphs of the Supplemental Petition set forth procedural facts recounting West's trial, conviction, sentence, appeal and filing of the *pro se* PCRA petition.  All of these facts were ascertainable by West immediately upon their occurrence without any knowledge of the law.  Paragraphs 6 and 7 of the Supplemental Petition recount West's petition for notes of testimony and the receipt of those notes on June 8, 1998.

The only facts set forth in paragraph 8 of the Supplemental Petition presumably resulted from appointed counsel's perusal of the notes of testimony received on June 8, 1998.  It is averred in paragraph 8 that, at trial, the victim testified that she did not report the sexual crimes committed

J. S52027/99

against her until three days after the incident. This fact would have been known by West when it occurred, since he was present throughout his own trial and heard the victim's testimony. West also avers in paragraph 8 that, at trial, he testified to consensual relations and that he did not have involuntary deviate sexual intercourse with the victim. Again, these are facts about which West must have had knowledge since they represent his own testimony. Finally, West avers in paragraph 8 that the trial judge never instructed the jury about the victim's delay in reporting the incident. Again, this would be a fact known to any person present in the courtroom when the charge was given to the jury.

The premise upon which West argues entitlement to the exception found in Section 9545(b)(1)(ii) is that all, or some, of the above facts were unknown to him and could not have been ascertained by the exercise of due diligence. However, it is obvious that all of the facts were known to him at the time of their occurrence. Since there is no basis for the premise upon which West advances his argument, we need not further consider the applicability of Section 9545(b)(1)(ii).

West also claims that his failure to timely file his *pro se* petition was the result of interference by government officials. This contention is framed in his assertion that "his trial transcripts and all court documents which give rise to the present facts were destroyed while he was in the care of

J. S52027/99

government officials while at the Camp Hill State Prison." Brief for Appellant at 16. We reject this argument.

In response to the printed, form inquiry requesting a response as to why affidavits, records or other supporting documents are not attached to the PCRA petition, West averred in his *pro se* PCRA petition: "DEFENDANTS COPY OF TRANSCRIPTS WERE DESTROYED, DO [sic] TO WATER-BREAK AT S.C.I. CAMP HILL." Motion for Post Conviction Collateral Relief, Form DC-198 (Rev. 7-89) ¶ 6 at 4, filed May 20, 1998. In the Supplemental Petition, West avers, at ¶ 11, that his trial transcripts and all court documents were destroyed while he was at Camp Hill. In his brief to this Court, West alleges that he cannot be held responsible for the acts, or failure to act, of government officials "who allowed [West's'] trial transcripts to be destroyed in a fire." Brief for Appellant at 16. However, there is no support in the certified record for the assertion that the documents were destroyed in a fire. It makes no legal difference whether the documents became unavailable resulting from a water main break or from fire damage. In either event, we are not inclined to determine that the loss, presumably unintentional, constitutes "interference by government officials with the presentation of the [PCRA] claim."

Moreover, West presents us with no authority or case law that would suggest that either a water main break or an unintentional fire constitutes

J. S52027/99

interference by government authorities. We have found no such authority. Given the failure of the appellant to develop the argument or cite to any relevant authority, we are constrained to find the argument, or lack thereof, on both subsections of Section 9545(b)(1) to be waived. ***Commonwealth v. Jones***, 546 Pa. 161, 178, 683 A.2d 1181, 1189 (1996) (holding claim waived where appellant made only a bald assertion as to admissibility without citing any authority for the proposition or sound argument for the claim); ***Commonwealth v. Lewis***, 708 A.2d 497, 500 n.1 (Pa. Super. 1998) (deeming contention waived where appellant did not develop any argument or cite any pertinent authority).

Because we conclude that West has failed to establish his right to the benefit of an exception to the one-year timeliness requirement found in Section 9545(b)(1), we need not address his second issue claiming ineffectiveness.

In issue three, West argues that Judge Lewis erred as a matter of law by failing to hold an evidentiary hearing regarding the factual allegations that West filed a timely *pro se* PCRA petition. There well may be circumstances under which a trial court would be obliged to hold an evidentiary hearing to determine whether one of the timeliness exceptions is applicable. Here, however, where the facts set forth in the petition in support of the claim are both clear and undisputed, and where those facts

J. S52027/99

would not warrant relief, a hearing is not required.   Pa.R.Crim.P. 1507;

**Commonwealth v. Morris**, 546 Pa. 296, 306, 684 A.2d 1037, 1042

(1996).  In **Morris**, our Supreme Court stated:

> A court may dismiss a PCRA petition if there are no genuine issues concerning any material fact.  The purpose of Rules 1507 and 1508 is to assure that an evidentiary hearing be held on a post-conviction petition if there are factual issues to be resolved.  However, when there are no disputed factual issues, an evidentiary hearing is not required under the rules.

**Id**. (citations omitted).  Consequently, we determine that the trial court did

not err in dismissing the PCRA petition without a hearing.

In summary, we conclude that the first issue is without merit and, in

the alternative, is waived.  We further conclude that find the trial court did

not err in dismissing the petition as being time-barred.  Accordingly, because

the petition is time-barred, we need not address the second issue that seeks

to secure review of alleged ineffectiveness of counsel at trial.  Accordingly,

we will affirm the order dismissing the PCRA petition.

Order denying post conviction relief is **AFFIRMED**.